# Hart *v.* Kendall.

*Statutory Real Action in nature of Ejectment.*

1. *Entries by book-keeper.*—Entries made by a book-keeper, by direction of his employer, not in the presence of the person against whom they are offered as evidence, and as to which the book-keeper has no personal knowledge or remembrance of the facts, are not admissible as evidence against that person.

2. *Due-bill as evidence of settlement and payment.*—A due-bill found among the papers of a deceased administrator, signed by him individually, and payable to one of the distributees of the estate, is not admissible as evidence against the payee, as showing a settlement between him and the administrator on account of his distributive interest in the estate, or in lands sold by the administrator and bought by himself; there being no evidence that the payee ever had possession of it, agreed to accept it, or knew that it had been made.

3. *Declarations or entries against interest.*—Declarations or entries made by a person since deceased, against his interest at the time, are admissible as evidence against a third person whose rights may be affected.

4. *Adverse possession by administrator, or purchaser from him, as against heirs.*—If an administrator take possession of his intestate's lands, he holds presumptively in subordination to the title of the heirs; if he sells the lands under a probate decree, becoming himself the pur-

[Hart v. Kendall.]

chaser, but the sale is not confirmed by the court, nor the purchase-money paid, nor a conveyance executed to him, his possession does not become adverse to the heirs, until there has been an open disclaimer of their title, and notice thereof brought home to them, either actually or presumptively; and if he sells and conveys to a third person, who pays the purchase-money, such purchaser does not acquire title as against the heirs, until after the lapse of ten years from the payment, unless his possession in the meantime, supplemented by the possession of the administrator after such disclaimer and notice thereof, equals that period of time.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. HENRY D. CLAYTON.

This action was brought by Anne E. Hart, against John M. Kendall and James T. Kendall, to recover an undivided one-eighth interest in a store-house and lot in Eufaula; and was commenced on the 10th October, 1883. The property sued for had belonged to John Hart, who died, intestate, in 1862, leaving eight children, one of whom was the plaintiff. Letters of administration on his estate were granted to H. C. Hart, who was a son of the deceased; and said H. C. Hart died in June, 1883, never having made a settlement of his administration. H. C. Hart took possession of the lands belonging to the estate, including the premises now sued for, and on the 1st July, 1871, under an order of the Probate Court, sold them for distribution, becoming himself the purchaser; but the sale was never reported to the court, never confirmed, and no conveyance was ever executed to said H. C. Hart under an order of the court. After the sale and purchase by the administrator, he contracted to sell a half interest in the store-house and lot to Harrison Hart, one of his brothers; and he executed a conveyance to said Harrison, both individually and as administrator, on the 27th August, 1880. The defendants claimed under a conveyance from said Harrison Hart, which was dated the 22d March, 1883. The cause was tried on issue joined on the plea of not guilty, and the statute of limitations of ten years.

On the trial, the plaintiff reserved several exceptions to the rulings of the court in admitting evidence which was offered by the defendants for the purpose of showing that H. C. Hart, after his purchase at his own sale, had paid plaintiff for her distributive share in the estate, and also that Harrison Hart had paid the agreed purchase-money for the half interest purchased by him. The material facts bearing on these exceptions are stated in the opinion. The plaintiff also excepted to the following charges given to the jury: (1.) "If Harrison Hart, by himself or agent, and those claiming through and under him, held possession of

10

[Hart v. Kendall.]

the lands for more than ten consecutive and continuous years before the commencement of this suit, claiming to hold it for themselves, and plaintiff had notice, actual or constructive, of such holding, then plaintiff can not recover." (2.) "If plaintiff knew of any fact reasonably calculated to put her upon inquiry that the property sued for was being held as against her, which inquiry, if followed up, would have disclosed to her that the property was so held, then she is chargeable with notice of every fact that such inquiry would have discovered; and if inquiry, based on such suggestive fact, would have disclosed that Harrison Hart, by himself or agent, was holding for himself, then plaintiff is held to have had notice of the character of the holding, and the same became adverse from that time." (3.) "The fact, if it be a fact, that plaintiff knew, after the sale of the Hart property in 1871, that Harrison Hart claimed an interest in the property sued for, is a circumstance to which the jury can look, in connection with all the other evidence in the case, to ascertain whether or not she knew that Harrison Hart, by his agent, Henry C. Hart, was in the possession of the property; and if the jury are satisfied, from all the evidence in the case, that the plaintiff had knowledge of facts which, if followed up, would have made known to her that H. C. Hart was holding possession of said property for himself and Harrison Hart, then she is chargeable in this suit with said knowledge; [and if said knowledge] was acquired, or could have been acquired by her, as above stated, more than ten years before the commencement of this suit, she can not recover."

The several rulings on evidence to which exceptions were reserved, and the charges given, are now assigned as error.

J. M. WHITE, for appellant, cited *Nolley v. Holmes*, 3 Ala. 642; *Moore v. Andrews*, 5 Porter, 107; *Galbraith v. Cole*, 61 Ala. 141; *Scarborough v. Reynolds*, 12 Ala. 252; *McDougald v. Dawson*, 30 Ala. 553; *Farley v. Smith*, 39 Ala. 44.

G. L. COMER, *contra*, cited *Vincent v. State*, 74 Ala. 274; *Humes v. O'Bryan*, 74 Ala. 64; *Barton v. Barton*, 75 Ala. 400; *Dothard v. Denson*, 72 Ala. 541; *Humes v. Bernstein*, 72 Ala. 546; *Sawyers v. Baker*, 72 Ala. 49.

CLOPTON, J.—The main issue, on which the case was tried, is the statute of limitations. As tending to show that H. C. Hart had paid plaintiff for her interest in the land sued for, the court admitted, against the objection of plaintiff, an entry in the blotter-book of said Hart, since

[Hart v. Kendall.]

deceased, giving her credit for cash deposited of $4,800.00, as per receipt on the day of the sale of the land; and permitted the book-keeper, who made the entry, to explain its meaning. McCormick, who was the book-keeper, testified that the entry was made by him, by direction of Hart; that he had no personal recollection of the transaction to which it relates, and would not know the signification of the entry, except from his knowledge of book-keeping. He further testified, that no money was deposited by plaintiff, and that she was not present when the entry was made. It is essential to the admissibility of entries made by a living witness, that he shall be able to state that, at or about the time the entries were made, he knew their contents, and knew them to be true, so that the entries and the testimony of the witness, concurrently, shall be equivalent to a present affirmation of the truth of their contents.—*Acklen v. Hickman*, 63 Ala. 494. The admission of the entry was to allow as evidence a declaration of Hart, without any testimony that plaintiff assented to it, or knew of its existence; and this, too, notwithstanding the witness disproved its truth.—*Jeffries v. C stleman*, 68 Ala. 432.

The due-bill, proved by the witnesses Merrill and Comer, is also inadmissible. It was made by Hart, and found among his papers after his death. There is no evidence that plaintiff ever had possession, or agreed to accept it, or knew that it had been made. A settlement between the parties, and payment, can not be established by testimony of this character.

The defendants claimed a half interest in the land, under Harrison Hart, and, in order to establish his adverse possession, proved that he purchased the half interest from H. C. Hart, at or about the time the land was sold by him as administrator. For the purpose of proving payment of the purchase-money by Harrison Hart, entries which H. C. Hart had had made, relating to the transaction, and policies of insurance on the property taken out by him, were admitted in evidence. While the general rule is, that the declarations of a person, as to a transaction with another, being regarded as hearsay, do not bind a third person, whose rights are involved, such declarations, when contrary to the pecuniary or proprietary interest of the declarant, and he is deceased, are competent evidence against third persons, though their rights may be affected.—*Humes v. O'Bryan*, 74 Ala. 64; *Trammell v. Hudmon*, 78 Ala. 222. The entries, and the representations in the policies as to the ownership, were declarations of H. C. Hart, against his proprietary and pecuniary interests, showing that he had

sold an interest and received payment, and were relevant to the issue of adverse possession.

The plaintiff, H. C. Hart, and Harrison Hart, were three of eight children and heirs of John Hart, who died intestate in 1862, and to whom the land belonged at the time of his death. They were tenants in common. H. C. Hart, having administered on the estate, took possession of the premises as such administrator; and in July, 1871, sold the land under an order of the Probate Court, and became himself the purchaser. No report of the sale, or of payment of the purchase-money was made, and there was no order of confirmation, or for a conveyance. The title of the heirs was not divested. On the day of the sale, he contracted to sell a half interest to Harrison Hart, giving him a bond for title, and made him a deed in August, 1880, as administrator and individually. The defendants claim under a conveyance made by Harrison Hart in March, 1883. The principal point of contention related to the character of the possession of defendants, and of those under whom they claimed. On this question, the court seems, in view of the facts, to have misapprehended the principles applicable, when the possession is originally acquired and taken in recognition of, and subordination to the title of the owner; and, by the instructions given, misdirected the inquiries of the jury. As the judgment has to be reversed, it will suffice, for the purposes of another trial, to state the general principles established by our decisions, to be observed in the determination of cases like the present.

When the title does not attend the actual possession, there is no presumption that the possession was taken, or is continued, in hostility, but rather in subordination, to the title of the true owner. The burden rests upon the party asserting it, to show adverse possession. If the possession was taken without permission of the owner, and in disregard of the title, with the intention to claim title, open and notorious possession, so long continued as to raise a presumption that it was known to the owner, will be sufficient to charge him with knowledge of the adverse possession; and it may be, that in such case mere possession, if known to the owner, will be sufficient to put him on inquiry as to its character. But, when the possession is permissive in its inception, or is acquired in subservience and subordination to the true title, it can only become adverse by a clear, positive, continuous disclaimer and disavowal of the title of the owner, and the assertion of a hostile claim, actually or constructively brought to his knowledge.—*Alexander v. Wheeler*, 69 Ala. 332. In such case, mere continuance in

possession, however open and notorious, without other dis-
claimer and disavowal, brought to the notice of the owner,
does not put him on inquiry as to its character, so as to
charge him with knowledge, which such inquiry would have
discovered. He has a right to presume, in the absence of
facts and circumstances showing the contrary, that the pos-
session is continued in the same manner, and by the same
right under which it was taken.—*Collins v. Johnson*, 57 Ala.
304; *Potts v. Coleman*, 67 Ala. 221; *Vandiver v. Stickney*, 75
Ala. 225.

On the death of John Hart, the title to the land descended
to his heirs. The possession of H. C. Hart, as administra-
tor, was friendly, and in subservience to their title. It pos-
sessed no element of hostility. His sale as administrator,
and purchase as an individual, did not operate to convert it
into an adverse possession. His continuance in possession
was under an executory contract of purchase, and, until
payment of the purchase-money, or a conveyance of the
title, his subsequent possession will be presumed to have
been in subordination to the title of the heirs.—*Boykin v.
Smith*, 65 Ala. 294. And as Harrison Hart purchased with
a knowledge of the nature of the possession and right of H.
C. Hart, his entry into possession was in subservience to
their title.—*Coyle v. Wilkins*, 57 Ala. 108. It is unnecessary
to consider the effect of the conveyance to him, as it was
not executed until August, 1880.

On the undisputed facts, the possession of neither H. C.
Hart, nor of Harrison Hart, was adverse up to this point.
*Hart v. Comer*, 79 Ala. 389. But, although the possession
originated rightfully, it may be converted into a possession
hostile and adverse. To effectuate this, there must be an
active, positive, and open disclaimer of the title of the heirs,
and the assertion of an independent hostile right, brought
to their knowledge.—*Smith v. Gillam*, 80 Ala. 296. Unless
those from whom the defendants derived possession, openly
and distinctly disclaimed and disavowed the title of the
plaintiff, and asserted an adverse right and title, brought
home to her, subsequently to the sale by the administrator,
and continuously, for a period of ten years, inclusive of the
time defendants have held possession, there is no founda-
tion for the operation of the statute of limitations.—*Dothard
v. Denson*, 72 Ala. 541. The inquiries to which the con-
sideration of the jury should be directed are : whether or
not H. C. Hart paid plaintiff her share of the purchase-
money, without reference to payment to the other heirs of
their distributive shares, which can not operate against
plaintiff; and if so, at what time was she paid ; or, whether

or not, though payment may not have been made, there was a distinct, open disclaimer and disavowal of her title, and the assertion of a hostile right and title; and if so, at what time was it brought to the knowledge of plaintiff with reasonable certainty? The statute of limitations begins to run from the time of payment, in the one case; and from the time knowledge of the disclaimer is brought home to plaintiff, in the other.

As "the whole doctrine of adverse possession rests upon the presumed acquiescence of the party against whom it is held, and there can be no acquiescence without knowledge," the burden to show payment, or disclaimer and notice to the plaintiff, is on the defendants. We do not mean, that knowledge of the disclaimer, and of the assertion of a hostile title, must be actual, or such as is imputed by express notice—cognizance of the main fact. "It may be a knowledge imputed impliedly by collateral facts, of such a nature as to cast on the party the legal duty of not being willfully or negligently ignorant of all proper inferences to be drawn from such facts."—*Wells v. Sheerer*, 78 Ala., 142. The collateral facts brought home to plaintiff, however, should be of such nature and character, that it would be willful or negligent ignorance not to draw the inferences which may be properly drawn from such facts themselves—not merely such facts as might be sufficient to cast on a *bona fide* purchaser, who seeks protection against latent equities, the duty to make further inquiry. The collateral facts should be such as call on the plaintiff to act as upon an asserted adverse title, observing, however, the distinction, that acts, which, if done by a person who enters in hostility to the title of the true owner, would *per se* be a disseizin, are not, when the entry is permissive, or subservient thereto, necessarily acts of disseizin, but are susceptible of explanation consistently with the real title.—*Fielder v. Childs*, 73 Ala. 567.

An observance of these principles will lead to a proper determination of the cause.

Reversed and remanded.