[Sac. No. 931.   Department One. — September 28, 1901.]

In the Matter of the Estate of GEORGE W. CAMP, Deceased. W. H. CAMP, Appellant.  DAVID BONHAM, Administrator, et al., Respondents.

PROBATE OF MUTILATED WILL — CONSTRUCTION OF CODE — REMEDIAL PROVISION. — Section 1339 of the Code of Civil Procedure, relative to the probate of a lost or destroyed will, is remedial in its nature, and is to be liberally construed, as applying to the probate of a mutilated will, some of the provisions of which have been destroyed.

ID. — TESTIMONY OF TWO CREDIBLE WITNESSES — SUBSTANTIAL AGREEMENT — DIFFERENCE AS TO LANGUAGE. — The requirement that the destroyed provisions must be "clearly and distinctly proved by at least two credible witnesses," does not import that they shall reproduce the exact language of the testator; and if their testimony agrees respecting the substance of the destroyed provisions of the will, those provisions may be established, though the witnesses may differ in their remembrance of the exact language used.

ID. — MUTILATED OLOGRAPHIC WILL — SIGNATURE OF TESTATOR. — Where a portion of an olographic will was torn off, including the final signature of the testator, and the substance of the destroyed contents was clearly proved by two credible witnesses, and one competent witness proved that its contents were wholly in the handwriting of the testator, and the initial clause thereof showed that it was intended to be a last will, and contained the name of the testator, the will was properly established.  The writing of the name of the testator in the initial clause of the olographic will was, of itself, a sufficient signature.

APPEAL from a judgment of the Superior Court of Kings County admitting a will to probate, and from an order denying a new trial.   William O. Minor, Judge.

The facts are stated in the opinion of the court.

Dixon L. Phillips, and H. P. Brown, for Appellant.

A. G. Park, for David Bonham, Administrator, Respondent.

R. Irwin, and Hudson & Pryor, for W. M. Thomas, Respondent.

HARRISON J. — A document was presented to the superior court of Kings County, accompanied by a petition setting forth that the above-named decedent had died, leaving an olographic

will, of which the said document was a portion, but that since his death said will had been mutilated and a portion thereof destroyed by some person unknown to petitioner, by tearing therefrom a portion of the sheet of paper upon which it had been written. The petition also set forth what was claimed to have been the contents of the portion torn from the document, and asked that it be established as a portion of his will, and that the said will be admitted to probate. Issues were joined upon the allegations of this petition, and upon the trial thereof the court found in accordance with the petition, and made its certificate, setting forth the provisions of the document as originally made by the deceased, and admitted the same to probate. From this order the present appeal has been taken.

The document presented to the court purports to be the last will of the above-named decedent, and contains certain testamentary directions. The third item of these directions, so far as the same is found upon the first page of the document as presented, is as follows: —

" 3. That all of my estate, both real and personal, (after all of my debts shall have been paid,) shall— " The remainder or bottom of this sheet had been torn off, but upon the opposite side, and beginning at the top of the page, followed these words: " to share equally and alike, in the following manner: should my wife, Hannah Camp, be living at the time either of my children arrives at maturity, then said child shall have and receive one half of its share in said estate set apart and delivered to her or him, and the other half or his or her share shall be delivered at the death of said Hannah Camp to him or her." The document, as presented to the court, had no signature of a testator, and the second page thereof ended with the words, " in the name," just above the portion that had been torn therefrom.

It was shown by the testimony of competent witnesses that the document before the court was wholly in the handwriting of the deceased, and that a few days after his death, his widow had shown it to the witnesses Bonham and McQuiddy, and that they had then examined and read it. Each of these witnesses testified that when it was thus shown to him, no part of the paper had been torn off, but that a portion had been since that time torn from the paper, and that the portion thus removed was wholly in the handwriting of the deceased. The testimony of both was to the effect that in its form when first

shown to them it was about two inches longer than at present, and contained a provision for the disposition of the property, and had appended thereto the signature of the decedent, and that the whole thereof, including the signature, was in his handwriting. The court subsequently struck out the testimony of the witness Bonham, to the effect that the instrument was in the handwriting of the deceased, upon the ground that he was not shown to be competent to give such testimony; but the testimony of McQuiddy upon this point was competent, and was sufficient to establish this fact. The finding of the court was to the effect that the document was entire and unmutilated at the death of the testator, and that it was wholly written, dated, and signed by him, in his own handwriting, as and for his last will and testament; that after his death a portion of the bottom of the sheet of paper upon which it had been written had been torn off and destroyed, and that the provision of the portion so destroyed was, that all of his estate, both real and personal, after all of his debts should be paid, "should go to his wife, Hannah Camp, during her life, and at her death should go to their children, Pearl Camp and Lee Camp; that on the opposite and last page of the sheet upon which said will was written, and at the bottom thereof, the name of G. W. Camp was subscribed by himself."

The witnesses Bonham and McQuiddy, in giving their testimony concerning the contents of the portion torn off, did not coincide in their statement of the language used by the testator, and upon this ground the appellant contends that the court was not authorized to make the finding which it did of the provision which the instrument originally contained.

Section 1339 of the Code of Civil Procedure provides: " No will shall be proved as a lost or destroyed will, unless the same is proved to have been in existence at the time of the death of the testator, or is shown to have been fraudulently destroyed in the lifetime of the testator, nor unless its provisions are clearly and distinctly proved by at least two credible witnesses." This provision of the code, being remedial in its nature, is to receive a liberal construction, and is held to apply as well to a mutilated will, or one in which some of its provisions have been destroyed. (*Hook* v. *Pratt*, 8 Hun, 102.) The above section does not require that the witnesses shall reproduce the exact language of the testator, but that the "provisions" of the will shall be "clearly and distinctly proved." If their testimony

respecting the contents of the lost portion of the will coincides as to the provisions therein made by the testator, the court is authorized to establish such provisions as a portion of the will, even though the witnesses may differ as to their remembrance of the exact language used by the testator. Thornton, in his treatise on Lost Wills, says (sec. 108): "It is enough to prove the substance of the will, without proving the precise statement of the language or terms used in it."

In *Jones* v. *Casler*, 139 Ind. 382,[1] that court said, with reference to the sufficiency of the petition: "To require that a copy of the will, or the language of the bequests in detail, should be pleaded, where no copy has been preserved, and where the memory of witnesses does not hold the exact words, would not only deny the substance for mere form, but would offer a premium upon the rascality of one whose interests might suggest the destruction of the will"; and in answer to the contention that the findings must establish the exact words of the will, said: "We have said, upon the demurrer to the complaint, that the substance is sufficient where the exact words cannot be established, and more certainty in findings cannot be required than is required in pleading or in evidence." (See also *McNally* v. *Brown*, 5 Redf. 372.) In jurisdictions where the contents of a lost will may be proved by a single witness, it is held that such witness is not required to repeat the exact language of the instrument. (*Allison's Devisees* v. *Allison's Heirs*, 7 Dana, 90; *Skeggs* v. *Horton*, 82 Ala. 352; *Anderson* v. *Irwin*, 101 Ill. 411; *Burls* v. *Burls*, L. R. 1 Pro. & D. 472.) A notable case in which this rule was applied was that of the will of Sir Edward Sugden. (*Sugden* v. *Lord St. Leonards*, L. R. 1 P. D. 154.) Under the reason of this rule a different remembrance of the exact language of the will by different witnesses would not take away the right to have the provisions of the will established, which are supported by the language told by each of them and are consistent therewith.

The testimony of each of the witnesses herein was to the effect that the disposition of his property made by the testator in the missing portion of his will was in favor of his wife during her lifetime, and for their children after her death. The testimony of the witness Bonham was more concise than that of McQuiddy, and the finding of the court corresponds more

---

[1] 47 Am. St. Rep. 274.

closely to this; but, although McQuiddy does not give the same language as does Bonham, and himself states the same in different forms, there is no contradiction between them as to the substance of the testator's provision for this disposition of his property. The property disposed of, the persons in whose favor the disposition was made, and the extent of the disposition in favor of these persons, were the same.

That the document was intended by the testator to be his last will is fully established by the initial clause thereof, and the writing by him of his name in that clause was itself a sufficient signature. (*Estate of Stratton*, 112 Cal. 513.)

The finding of the court that the deceased left surviving him two children, Pearl Camp and Lee Camp, is fully sustained by the documents relating to their adoption, which were introduced in evidence.

The judgment and order are affirmed.

Garoutte, J., and Van Dyke, J., concurred.