## In RE FRANDSEN'S WILL

No. 2944. Decided August 6, 1917. (167 Pac. 362.)

1. APPEAL AND ERROR—FINDINGS OF COURT—REVIEW. In a law case, the findings of the trial court, if supported by some substantial evidence, are binding, and cannot be disturbed on appeal. (Page 159.)

2. WILLS—LOST WILLS—PRESUMPTIONS. When it is shown that testator made a will which could not be found at his death, ordinarily the presumption arises that he himself destroyed it for the purpose of revoking it. (Page 162.)

3. WILLS—LOST WILLS—PROOF—SUFFICIENCY. Under Comp. Laws 1907, section 3810, which provides that no will shall be proved as a lost or destroyed will unless it is proved to have been in existence at the time of the death of testator or is shown to have been fraudulently destroyed in his lifetime, nor unless its provisions are clearly proved, proof that testatrix in 1900, while she was sane, made the lost will,

and that it was in existence eight months after she became insane, was sufficient for admission of the will to probate. (Page 165.)

4. EVIDENCE—LOST WILLS—RECORDS. The records in the county clerk's office of a lost will were not competent independent evidence of the provisions of the will. (Page 166.)

5. WILLS—CONTEST—GROUNDS—OMITTING BENEFICIARIES. That the will made no provision for protestant, testatrix's granddaughter, was not a ground for contest, but a matter which could be presented upon final distribution as provided for by Comp. Laws 1907, section 2762. (Page 166.)

Appeal from District Court, Seventh District; *Hon. A. H. Christensen*, Judge.

In the matter of the probate of the wills of Karen Frandsen, Deceased.

Decree refusing probate. The proponent of two of the wills appeals.

REVERSED and REMANDED, with directions.

*Stewart, Stewart & Alexander* for appellant.

*S. A. King* and *J. W. Cherry* for respondent.

FRICK, C. J.

This is a proceeding involving three different and independent wills. One Karen Frandsen, a resident of Carbon County, Utah, of the age of seventy-seven years, died on the 4th day of March, 1915, leaving surviving her five sons and one daughter, all of whom were of lawful age. She also left surviving her eight grandchildren, the children of a deceased son, all of whom, except one, were minors; and she also left surviving her another grandchild who was the daughter of another deceased son. The father of the eight children mentioned died after the several wills hereinafter mentioned were executed, but the father of the last-mentioned grandchild had died before their execution. Under the provisions of our statute it is important to keep in mind the facts last above stated. On the 17th day of March, 1915, one of the sons presented a writing for probate which purported to be the last will and testament of the de-

ceased. The alleged will was dated July 5, 1911, and a copy was attached to the application. The daughter of the deceased filed a protest to the allowance of that will to probate upon the grounds that the same was not executed as provided by our statute, and that it was not the last will and testament of the deceased. In connection with her protest she also presented what purported to be the last will and testament of the deceased dated July 27, 1912, or nearly a year after the first will presented for probate was dated. A copy of that alleged will was attached to her application. One Hannah Jorgensen, the daughter of the son of the deceased who died before any one of the wills was executed, also filed a protest to the allowance of either one of the two alleged wills to probate upon the ground that she is a grandchild of the deceased, and that she was not mentioned in said wills, and hence, in so far as said wills affect her interest in the estate of the deceased, they are of no effect under the provisions of Comp. Laws 1907, sections 2761, 2762. She, however, also assailed both of said proposed wills upon the further ground that at the time the same were executed the testatrix was insane and mentally incapacitated from making a valid will. Four of the surviving sons also filed a protest against the probate of the will of June 27, 1912, presented by the daughter of the deceased, upon the ground that the testatrix at said time was insane and mentally incapacitated, and that that will was obtained or was the product of fraud and undue influence practiced on the deceased by the daughter aforesaid. After all of the protests had been filed, and after the court had indicated that at the times the will dated July 5, 1911, and the one dated July 27, 1912, were executed the testatrix did not possess sufficient mental capacity to make a will, the daughter of the deceased presented another will dated July 19, 1900, and asked that the same be admitted to probate as a lost will, and upon the further ground that the same had been fraudulently destroyed. After a hearing of all the protests the court found against all of the wills, and refused to admit any of them to probate. The material findings of the court are as follows:

·. "That the purported will of said deceased tendered and offered for probate by Anna Frandsen Horr, alleged to have been executed on the 19th day of July, 1900, was not in existence at the time of the death of said deceased, and was not fraudulently destroyed during the lifetime of said deceased, and was not surreptitiously, fraudulently, or without the knowledge of said deceased, or with the view of defeating the intentions and purposes of said deceased or at all destroyed by George G. Frandsen, a son of said deceased, or by any other person, and said will was not in the possession of the said George G. Frandsen, at any time. That at the time of the pur-- ported execution of the will offered for probate by George G. Frandsen, to wit, the 5th day of July, 1911, and for a long time prior thereto, the said Karen Frandsen was not of sound mind or memory, but that her mind was weak, debilitated, and deranged to such an extent that she was incapacitated from executing or understanding a will. That at the time of the purported execution of the will offered for probate by Anna Frandsen Horr, to wit, the 27th day of June, 1912, and for a long time prior thereto, the said Karen Frandsen was not of sound mind or memory, but that her mind was weak, debilitated, and deranged to such an extent that she was incapacitated from making, executing, or understanding a will."

The court also found that the will of June 27, 1912, was obtained by undue influence practiced on the testatrix by the proponent of that will, but that finding, for reasons hereinafter appearing, is of no controlling influence.

The proponent of the will of June 27, 1912, assails the court's findings, and insists that the evidence is insufficient to justify a finding that the testatrix was insane or mentally incapacitated at the times aforesaid, and she also assails the findings respecting the issue of undue influence. We have carefully read the evidence produced by all the interested parties, and while the evidence respecting the mental capacity of the deceased is not as convincing, when viewed in the light of all the circumstances disclosed by the evidence, as it might be, yet there is some substantial evidence in support of the court's findings on that issue. In view, therefore, that this

is a law case and that we are bound by the findings, if supported by some substantial evidence, we may not interfere with those findings. The evidence upon the issue of undue influence is weak and unsatisfactory, yet, as before stated, that finding is not of controlling influence, and hence needs no further consideration.

We shall consider only such facts as have a controlling influence upon the result, and therefore shall eliminate everything else from consideration.

In view of the court's findings, therefore, both the proposed will of July 5, 1911, and of June 27, 1912, must fail. This leaves only the proposed will of July 19, 1900, to be considered. The probate of that will is controlled by Comp. Laws 1907, section 3810, which reads as follows:

"No will shall be proved as a lost or destroyed will, unless the same is proved to have been in existence at the time of the death of the testator, or is shown to have been fraudulently destroyed in the lifetime of the testator, nor unless its provisions are clearly and distinctly proved by at least two credible witnesses."

As appears from the court's findings, the will of July 19, 1900, was also disallowed. The question we must determine, therefore, is whether the court's findings respecting that will are supported by evidence, and whether its conclusions of law with respect thereto are sound. The facts which must control upon that question are not in dispute. In substance they are that on July 19, 1900, the testatrix, then of sound and disposing mind and memory, duly executed the will last proposed for probate, and, pursuant to the provisions of Comp. Laws 1907, section 2740, deposited the same with the county clerk of Carbon County; that thereafter, and before any of the other proposed wills were executed, the testatrix, at least once, in the presence of one witness, saw the will in the county clerk's office, and she then, and at other times, according to the evidence, expressed herself as being satisfied with its provisions; that the will was recorded in a book in the county clerk's office by a young lady who held some official position in said office; that the will was last seen in the county clerk's office

by the witnesses who testified on the hearing, in March, 1912, and its contents were then examined by them. One of the witnesses was an attorney who examined the will for the purpose of preparing the proposed will dated June 27, 1912, and which will he prepared, and the other witness was the husband of the proponent of the will of 1900. The will as recorded in the clerk's office was also produced in court, but the court refused to admit it in evidence. As we have seen, the court found that on July 5, 1911, and on June 27, 1912, the testatrix "was not of sound mind or memory," and that she then was "incapacitated from making, executing, or understanding a will." We thus have a case where the will in question was shown to have existed some eight months after the testatrix had become insane, as found and declared by the court, which finding and declaration, as we have seen, is binding upon us and upon the parties in interest.

The question therefore arises whether the court's finding that the will "was not in existence at the time of the death of said deceased" is supported by the evidence. The evidence that the will was in existence at least eight months after July 5, 1911, when the testatrix was found and declared to be insane, is not disputed. Nor is there any dispute regarding the fact that at, and for some time before, the trial the will could not be found in the clerk's office or elsewhere. No one testified who saw it after March, 1912, and no one seemed to know where it was. In other words, the evidence discloses that the will could not be found. The court, therefore, found that it did not exist at the time stated in the finding. This case is unique in that the will in question, beyond all dispute, was shown to be existing long after the testatrix possessed the capacity either to make or to revoke a will. The purpose of section 3810, supra, is to prevent the probate of wills that have been revoked by the testators and also to prevent probate of wills, unless it is shown that the proposed will existed at the death of the testators. The purpose of the statute is to prevent spurious wills from being proved.

When it is shown that the testator made a will, but that it could not be found at his death, then, ordinarily, the pre-

sumption arises that he himself destroyed it for the purpose of revoking it before his death. The provisions of section 3810, supra, have been adopted in a number of states. Section 1339 of the California Code of Civil Procedure is precisely like our section 3810, supra. The statute of New York is also like ours, except that in the New York statute a correct copy or draft of the will, in establishing its provisions, is equivalent to one witness. The same is the case in the state of Washington. The statute was under consideration in California in *Estate of Kidder*, 66 Cal. 487, 6 Pac. 326, and in *Estate of Patterson*, 155 Cal. 626, 102 Pac. 941, 26 L. R. A. (N. S.) 654, 132 Am. St. Rep. 116, 18 Ann. Cas. 625, and again in *Estate of Camp*, 134 Cal. 233, 66 Pac. 227. In the Kidder Case it was held that where a will had been handed to the testatrix, who was ill at the time, and that she either cast it into an open fireplace, or it accidentally fell from her hands into the open fireplace and was destroyed, and she thereafter died without doing anything with respect thereto, the will, as a matter of course, ceased to exist, and that it was not fraudulently destroyed within the purview of the statute, and hence probate was properly denied. The statute in another proceding was again before the Supreme Court of California in *Estate of Camp*, supra, and the Supreme Court then said:

"This provision of the Code, being remedial in its nature, is to receive a liberal construction, and is held to apply as well to a mutilated will, or one in which some of its provisions have been destroyed."

The only purpose in referring to that case is to show that the statute is regarded as remedial, and hence should be given a fair and reasonable construction and application. That is, if the whole purpose of the statute can be subserved, the court, in furtherance of justice, may well give its provisions a fair and even a liberal construction rather than a narrow and strict one, when to do that would be unfair or unjust. The doctrine of liberal construction is exemplified by the Supreme Court of California in *Estate of Patterson*, supra. It was there shown that after the destruction of the will and the death of the testatrix the statute was amended so as to include the destruction of wills by a public calamity as well as those destroyed by

fraud.   It was accordingly held that the amendment should apply, although the will was destroyed and the testatrix had died before the amendment was adopted.

As before stated, the statute is also in force in various other states where it has been the subject of judicial consideration. Among other cases we refer to the following: *Schultz* v. *Schultz,* 35 N. Y. 653, 91 Am. Dec. 88; *In re Cosgrove's Will,* 31 Misc. Rep. 422, 65 N. Y. Supp. 570; *Matter of Kennedy,* 167 N. Y. 163, 60 N. E. 442; *Collyer* v. *Collyer,* 110 N. Y. 481, 18 N. E. 110, 6 Am. St. Rep. 405; *In re Miller's Will,* 49 Or. 452, 90 Pac. 1002, 124 Am. St. Rep. 1051, 14 Ann. Cas. 277; *In re Harris' Estate,* 10 Wash. 555, 39 Pac. 148; *In re Reiffeld's Will,* 36 Misc. Rep. 472, 73 N. Y. Supp. 808.

In *Schultz* v. *Schultz,* supra, the Court of Appeals of New York considered the question at some length.   In that case the testator executed his will on October 23, 1863.   He left it for safe-keeping with one of the beneficiaries, who placed it in his trunk.   The testator died on September 20, 1865, nearly two years after he had executed the will, and left it with the custodian as aforesaid.   When the testator died the custodian supposed the will was in the trunk where he had placed it, but it was not there, and could not be found.   It was shown that the testator did not have the will in his possession after he placed it with the custodian, and before his death.   The Court of Appeals, after quoting the statute, which is precisely like ours, except that it contains the additional provision that a correct copy or draft of the will shall be deemed equivalent to one witness, says:

"If the will had remained in the custody of the testator, or if it had appeared that, after its execution, he had access to it, the presumption of law would be, from the fact that it could not be found after his decease, that the same had been destroyed by him.   *   *   *   As to the existence of the will, at the time of the testator's death, we have the conceded fact of the execution of the will, and of the deposit of the same with a custodian for safe-keeping.   The custodian testifies, that, after it was delivered to him, at the time of its execution, he never parted with its possession, but locked it in a trunk, and supposed it was there at the time of the testator's death.   Upon search made for it, after his death, it could not be found.   There is not a scintilla of evidence, or a circumstance, to show that the testator ever had possession of the will, after its

execution and delivery to the custodian. It follows, therefore, as a legal conclusion, that the will was in existence at the time of his death (if not then fraudulently destroyed or lost), in which event, it being now lost or destroyed, either by accident or design, it should be established as a valid will. If the will was not in existence, at the time of the testator's death, then it follows equally clear, that it must have been fraudulently destroyed in his lifetime or lost. The fraud mentioned and referred to in this connection is a fraud upon the testator, by the destruction of his will, so that he should die intestate, when he intended and meant to have disposed of his estate by will, and never evinced any change of that intent. It is undeniable, from the facts in the record, that either this will was in existence at the time of the death of this testator, or that it had been destroyed in his lifetime, without his knowledge, consent, or procurement, or accidentally lost. If so destroyed, it was done fraudulently as to him, and, in judgment of law, the legal results are the same precisely as if it had continued in existence up to the time of his death. In either contingency, it was his last will and testament, and its loss or destruction, either by accident or design, being proven, it is the duty of the court to establish it as the will of this testator. The judgment of the Supreme Court should be reversed, and a new trial ordered, costs to abide the event.''

We have quoted copiously from the Schultz Case because what is there said reflects the opinions of the courts in all the other cases we have cited.

In the case cited from Oregon, as well as in the one from Washington, evidence regarding the existence of the will at the death of the testator was circumstantial and in some respects very inconclusive, yet it was held that the wills should be admitted to probate. In the Oregon case the judgment of the lower court admitting the will to probate was affirmed, while in the Washington case the judgment of the lower court denying the will to probate was reversed, and it was ordered that the will be admitted to probate. The facts in those cases were different from the facts in the case at bar only in that, in those cases, the testators died sane, while in this case the finding is conclusive that the testatrix died insane. As we have shown, however, in the case at bar the evidence is conclusive that the will was in existence a long time after the testatrix was insane as found and declared by the court. If, therefore, the testatrix was insane and thus incompetent to make a will, she was likewise incompetent to revoke one. Woerner, Law of Decedent Estates, section 204; *Allison's*

*Devisees* v. *Allison's Heirs,* 37 Ky. (7 Dana) 91, where the law in the headnote is stated thus:

"It requires the same capacity to revoke a will as to make one."

That is elementary, and we think no one will dispute it. In the cases we have cited it is held that in case it is shown that the testator has power to execute a will, and has left it with a depositor, and that he did not have access to it after its deposit and before his death, the presumption that he destroyed it for the purpose of revoking it is overcome. That is common sense, and, we may add, common experience.

Now, in this case it is conclusively shown that the will existed for a period of about eight months after the testatrix became insane and incapacitated from either making or revoking a will. True, the testatrix continued her physical existence. Her mind, however, the one thing necessary to make or revoke a will, was gone. The testatrix was therefore mentally dead, and hence incapable of doing any act which required mental consent or concurrence. It was therefore legally impossible for her to have revoked the will of July 19, 1900. It is conclusively proved, therefore, that she did not revoke it. It also appears that no one either could or did destroy it by her direction, or with her consent, since legally she could give neither. What, then, are the legitimate, and only legitimate, inferences that may be deduced from the undisputed facts? They are: (1) That the will existed at the mental death of the testatrix; and (2) that if it was destroyed, it was without her knowledge or consent, and therefore its destruction could not revoke it. If, therefore, it had been conclusively shown that the will of July 19, 1900, continued to exist nine months after the physical death of the testatrix, no one would doubt or question the right of the proponent thereof to have the same admitted to probate, in view that the evidence is also undisputed that the testatrix was sane in July, 1900, and that the will was in all respects executed as required by our statute. The only difficulty, therefore, lies in the fact that the testatrix continued to live until 1915. While she continued to live physically, she, however, was as much dead mentally for the purpose of making or revoking a will as she now is. The mere fact that she lived

is of no consequence now. Nor is that fact of any importance so far as the purpose of the statute is concerned. When it is once shown that a testator is bereft of the power either to change or to revoke an existing will, and it is further shown, as here, that the will existed long after the power to revoke passed from the testator, then such a will fairly comes within the provision of section 3810, supra, and should be admitted to probate the same as though the testator had physically died. The legal effect in the one case is precisely the same as in the other.

We are of the opinion, therefore, that the court erred in its finding respecting the existence of the will, and certainly erred in its conclusion of law and judgment denying the will of July 19, 1900, to probate. That is, the finding respecting the existence of the will, then construed as the court construed it, is erroneous.

Counsel for proponent has also assigned other errors. One is that the court erred in excluding from evidence the record of the will. We cannot see in what way the record of the will was competent as independent evidence. Any one who had compared the original with the record could, as a matter of course, have testified to the correctness of the copy, and the copy could then have been used as an examined copy of the original. Greenleaf, Ev. (16th Ed.) section 508. That is, any person who had made a copy of the original will, or who had compared the original with the prepared copy, which was shown to be a correct copy of the original, could have presented such copy as secondary evidence under the rule of examined copy. We know of no statute, however, and none is referred to, which makes the record of an unprobated will competent evidence. The court did not err, therefore, in refusing to admit the record of the will. The provisions of the will were, however, clearly established by other competent evidence.

We remark that, in view that the will of July 19, 1900, makes provision for the protestant, Hannah Jorgensen, her objections must likewise fail. Indeed, an objection of that character is not good as a ground of contest, but

it is a matter that may be presented and considered when the court makes distribution of the estate as provided in Comp. Laws 1907, section 2762.

Nor are any of the other assignments of the proponent of the will material now.

In view, therefore, that the question involved here is one purely of law it is not necessary to prolong this litigation. The findings and conclusions of law, so far as the same are contrary to the views herein expressed, are set aside, and the cause is remanded to the district court, with directions to vacate and set aside the findings of fact and conclusions of law aforesaid. The court is also directed to modify its judgment in so far as thereby the will of July 19, 1900, was disallowed to be proved, and to make findings of fact and conclusions of law and to enter judgment admitting said will to probate, and to proceed with the administration of the estate in the usual way. Costs of the appeal to be paid out of the general assets of the estate.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.