### GASSIN et al. v. McJUNKIN.

No. 24404. June 4, 1935.

Rehearings Denied July 16, 1935, and Sept. 10, 1935.

Bailey & McLaury, for plaintiffs in error.

Mounts & Chamberlin and Wilson & Roe, for defendant in error.

PER CURIAM. This action was begun by Adrain A. Gassin, two brothers, and a sister, children of Andrew Gassin, Sr., and May L. Gassin, both deceased, as plaintiffs, against Andrew Gassin, Jr., a brother, if living, and, if dead, his unknown heirs, etc., to quiet title to lands patented to Andrew Gassin, Sr. Publication service was had upon affidavit of one of plaintiffs that the whereabouts of the defendant Andrew Gassin, Jr., if living, and that of his unknown heirs, etc., if dead, could not be discovered by diligent inquiry. The named defendant did not appear, nor did any other claiming under him, wherefore default judgment was entered for plaintiffs on October 4, 1928. The following November 5th, Madge Fonnell McJunkin, who claimed to be the daughter and sole heir at law of Andrew Gassin, Jr., filed her petition to vacate the judgment, which was later amended. To this plaintiffs filed answer. Mrs. McJunkin averred that she had no notice of the pendency of the proceedings; that Andrew Gassin, Jr., her father, was dead and had been for many years; that she was his sole heir at law; that fraud had been practiced upon the court in obtaining the judgment in that, knowing Andrew Gassin, Jr., to have been dead and her to be his heir, plaintiffs had filed affidavit for publication service in which the whereabouts of Andrew Gassin, Jr.'s, heirs were said to be unknown, whereas her whereabouts were known to, or could have been readily discovered by plaintiffs. After hearing the petition to vacate, the lower court granted the same. In this plaintiffs claim error. The evidence produced by Mrs. McJunkin sustained the averments of her petition to vacate, and showed, beyond cavil, that she had no notice of the pendency of the proceedings. She had punctually taken steps against the judgment upon learning of its rendition. Her tendered answer and proofs submitted indicated a defense. There was no error in vacating the judgment and letting her in to defend. Section 189, Okla. St. 1931.

Trial of the cause was then had upon the merits. The facts involved were substantially the following: Andrew Gassin, Sr., homesteaded the lands in question, and to him they were duly patented. He died in 1911. He devised his property by will to his wife, May L. Gassin. The will made

no provision for his children, the four plaintiffs and Andrew Gassin, Jr., but omitted all mention of them. The will was admitted to probate upon a petition which showed the survivorship of five children; all of whom, save one, were adults. Final settlement of the accounts of executrix was had and decree of distribution entered. The latter distributed the lands in suit to the widow, May L. Gassin, following a finding that the same constituted the homestead of deceased. Mrs. Gassin continued occupancy of the lands until about the time of her death in 1919. She left a will by which she devised the lands in question to the four plaintiffs, leaving to Andrew, Jr., the sum of $1. This will was admitted to probate, and, thereafter, on petition for distribution the lands were decreed to the plaintiffs, as provided by the will. The evidence indicated possession of the lands by Mrs. Gassin from the time of decree of distribution of her husband's estate until her death, and by plaintiffs from date of the decree of distribution of her estate to date of trial. The trial court found that Andrew Gassin, Jr., was presumptively dead at the time that May L. Gassin's will was made; that Mrs. McJunkin was his sole heir at law; that she inherited from her father and from her grandmother, May L. Gassin, a total of an undivided one-fifth interest in the lands in controversy, and decreed this interest to her. To reach this result, the lower court held the evidence sufficient to sustain a presumption of death of Andrew Gassin, Jr., prior to 1918, and ignored the wills and proceedings had in administration of the estates of Andrew Gassin, Sr., and May L. Gassin.

Plaintiffs complain that the evidence was insufficient to sustain the court's finding that Andrew Gassin, Jr., was presumptively dead in 1918. There was sharp conflict in the testimony. Mrs. McJunkin's proof was that Andrew, Jr., left the neighborhood of his home in January, 1905, evidently in search of work; that her mother, Andrew, Jr's., wife, received one letter from him thereafter, written from Lawton; the next report of him was that he had been committed to jail at Chandler, from whence, following conviction for some offense, he was sent to the Kansas state penitentiary at Lansing, in that state, where he was killed by guards while endeavoring an escape; that notice of his death was published in a newspaper, which had been read by some one or two people in the neighborhood; that his wife had never again

heard from him; that it was generally understood in the community that he was dead and this understanding had endured for many years. It was further developed that, prior to her death, Mrs. Gassin had interested herself in some measure in seeing that Mrs. McJunkin, then a child, received an inheritance from a relative which would have gone to her father, Andrew, Jr., had he been alive, and that administration proceedings had been taken upon Andrew, Jr.'s estate in Tillman county as to this inheritance. In opposition to the foregoing, plaintiffs' evidence was to the effect that Andrew, Jr., had left the neighborhood of his home because of an altercation with his father-in-law, who had remonstrated with him concerning real or fancied mistreatment of his wife, then in pregnancy; that the father-in-law had beaten him, and Andrew, Jr., feared for his life; that he had assumed the name of McCoy, under which he corresponded with his own family, because of fear of his wife's father and family; that the records of the courts at Chandler failed to show the pendency of criminal proceedings against Andrew, Jr., under the name which Mrs. McJunkin sought to show he had assumed, and that an investigation at the Lansing penitentiary developed that no person under such name had been imprisoned there; that Andrew, Jr., had sent home a photograph of himself from a point in Iowa, had written to his mother and sisters; had sent home pictures of dredge boats upon which he had worked on the Mississippi; that he sent a younger brother a birthday gift from Minnesota; and parts of letters which he is said to have written to his family were received in evidence. One witness testified that he had seen Andrew, Jr., in Kansas City in 1923, who, having first denied his identity, afterward admitted it. Some mention was made of his having been heard of in the vicinity of Tampa, Fla., at a later date. However, neither his wife nor his infant daughter ever heard from him save the one letter which he wrote soon after leaving. Mrs. McJunkin calls attention to the allegations of the amended petition of plaintiffs, upon which the cause was tried. These are to the effect that Andrew, Jr., had been absent for more than 22 years; that his whereabouts are unknown and have not been discoverable by diligent search and inquiry, and otherwise casts much uncertainty over the probability of his continued being. Without pausing to determine the conclusive character of these admissions, in view of

opposing counsel's lengthy examination of one party plaintiff upon the subject, as his own witness and on cross-examination, it must be concluded that in any case, as admissions, they constituted strong evidentiary support of Mrs. McJunkin's case. See Lee v. Little, 81 Okla. 168, 197 P. 449; Brown v. Hartford Fire Ins. Co., 108 Okla. 90, 234 P. 352; Miller v. Gregory, 132 Okla. 48, 269 P. 302; Home Ins. Co. v. Whitchurch, 139 Okla. 1, 281 P. 234; Kilpatrick v. Plummer, 145 Okla. 117, 291 P. 501. These allegations were clear in stating that Andrew, Jr., had been absent for 22 years and that his own family, including plaintiffs, had been unable to locate him by diligent search and inquiry. The evidence offered by Mrs. McJunkin, coupled wth the plaintiffs' admissions, as above, made a sufficient case of unexplained absence from his home, wife, and family for such length of time as sustains a finding of his presumptive death before 1918. Modern Woodmen v. Michelin, 101 Okla. 217, 225 P. 163, 36 A. L. R. 971; Lincoln v. Herndon, 141 Okla. 212, 285 P. 120; Modern Woodmen v. Ghromley, 41 Okla. 532, 139 P. 306. It was the peculiar province of the trial court to determine the credibility of the witnesses and to weigh the proofs. We cannot assent to the contention that the evidence was insufficient to warrant the finding complained of.

The trial court found that Andrew, Jr., was alive at the time of the death of his father. Mrs. McJunkin contends that, inasmuch as the lands involved constituted the homestead of Andrew Gassin, Sr., and his wife, May L. Gassin, it was not competent for the former to devise the same by will to the latter. Therefore, it is argued, neither the will nor any proceedings upon the estate of Andrew Gassin, Sr., could in any wise affect the interest therein which would otherwise have come to Andrew, Jr., by inheritance. Section 1193, Okla. St. 1931, requires an executor or administrator of a decedent's estate to take into possession all of the real and personal property, "except the homestead." Section 1208, supra, requires the filing of an inventory and appraisement of all property of the estate, excepting, among other property, the homestead. Section 1225, supra, exempts the homestead from liability for any debt not secured by lien thereon and owing prior to or at the time of death. Section 1223, supra, provides, in respect to the homestead, as follows:

"Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings, until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age."

While it is apparent from the foregoing that the homestead may not be taken into the possession of the executor or administrator, may not be mortgaged or sold for general claims against, or debts of, the estate, nor for probate costs, and otherwise may not be withdrawn from the use and occupancy of the surviving spouse during the latter's lifetime, and of the children, until majority of the youngest, thereafter, unless abandoned, the statutes do not inhibit a testator in whom ownership rests from disposing of the land by will, subject to these statutory rights in surviving spouse and children, respectively. The right of occupancy of the homestead by the surviving spouse which the statute secures is concededly not the subject of testamentary disposition, nor may the testator impair it in any way. Bacus v. Burns, 48 Okla. 285, 149 P. 1115; Holmes v. Holmes, 27 Okla. 140, 111 P. 220. While this possessory right endures, no action for partition by heirs will lie. Pennington v. Woodner-McGaugh, 54 Okla. 110, 153 P. 875; Wares v. Knabe, 84 Okla. 66, 202 P. 774; Re Gardner's Estate, 122 Okla. 26, 250 P. 490. Possession of the homestead may not be wrested from the survivor, so long as life endures and the right thereto is not abandoned. But this does not restrain disposition of the homestead by will, subject to right of surviving spouse and children, respectively, to which the statute speaks. In Re Cole's Estate, 85 Okla. 69, 205 P. 172, section 1223, St. 1931 (then sec. 6328, R. L. 1910), was considered in its effect upon the right of testamentary disposition of the homestead, subject to the statutory right of occupancy of the survivor, as follows:

"The right of the surviving spouse to continue to possess and occupy the homestead is an individual right, and not an interest in the testator's property. This right is not subject to testamentary disposition, and does not pass under the decedent's will. * * * Section 6328, supra, does not attempt to place a limitation on the right of either the husband or wife to bequeath any or all of their property. Its office is to protect the surviving spouse in the possession

and occupancy of the homestead. That section does not affect the validity of the will."

In Roberson v. Hurst, 80 Okla. 115, 190 P. 402, it was observed:

"We know of no statute, and none has been pointed out to us, which prohibits a husband owning land impressed with the homestead character from willing the same to his wife."

However, the right of a devisee or heir at law to possession of the land is suspended in favor of the beneficiary designated by statute and for the time therein stated, or until abandoned. Re Gardner's Estate, supra; Severtson v. Peoples, 28 N. D. 384, 148 N. W. 1058. It was not required that Andrew Gassin, Sr., abstain from making testamentary disposition of the fee of this land, simply because he was possessed of no power to infringe the right of his widow to continue its occupancy for her life.

Nor, in proceeding to a distribution of Andrew Gassin's estate, upon final account of his executrix, was the county court without jurisdiction to determine and direct to whom' the homestead lands should go, subject to the right of occupancy of the surviving spouse which the statute vouchsafes. Conceding, as must be, that the court would have no power, in such a case, to divest the surviving spouse of possession of the homestead (Ward v. Cook, 152 Okla. 234, 3 P. [2d.] 728), the land itself, subject to the statutory right of occupancy and possession, is a legitimate subject for operation of a decree of distribution, wherein heirs or legatees must be determined. Sections 1358, 1359, Okla. St. 1931. And this, notwithstanding the language of section 1223 that the homestead "shall not in any event be subject to administration proceedings, until it is otherwise disposed of according to law." The statutes (sections 1358, 1359) clearly impose upon the county court a duty to decree a final and full determination of the heirs at law or legatees and devisees and their respective interests in decedent's estate. Provision is made for due and proper notice. Section 1345, Okla. St. 1931. If the status of the homestead lands as to who should take them, subject to the statutory right of occupancy by the surviving spouse, were to be left undetermined, while the remainder of the estate is distributed to those entitled thereto by will or descent, an anomalous situation is presented—one not in accord with the theory of our law. This point provoked the following comment in Pennington v. Woodner-McGaugh, supra:

"Upon the death of the husband of defendant in error she and the other parties to this action became immediately vested with the title to his real estate, subject to the right of defendant in error to possess and occupy the homestead. No proceedings in the probate or any other court were necessary to vest this title in them. But while this is true, it is evident that there would also be no record title in anyone, and persons dealing with the real estate of decedent could have no official and record knowledge as to who held the title thereto. It therefore became necessary to have some adjudication upon the question of heirship. There is no other method in our state by which the heirs of a deceased person can be determined judicially, and thus become a matter of record, but a proceeding in the county court such as was taken in the case at bar."

In Pioneer Mtg. Co. v. Carter, 84 Okla. 85, 202 P. 513, it was said:

"The only jurisdiction the county court of this state has of the homestead is to make an order setting the same aside to the survivor or minor children or to renew a mortgage already existing upon the homestead and the rights they may have regarding the '(sic, same on) final settlement of the estate."

Note, also, Re Gardner's Estate, supra, syl. 6.

The right to devise the homestead by will, subject to the rights of surviving spouse and children thereafter in respect to possession, as held, would presuppose authority in the court in which probate was had to decree distribution of the remainder. The language of the statute above quoted would appear to refer to freedom of the homestead from decedent's general indebtedness, exemption from management and possession by the personal representative and of expenses of administration, rather than to withdraw it from the county court's jurisdiction to determine the rights of heirs and devisees in the remainder. We so hold.

Mrs. McJunkin next maintains that there descended to her father, by law, an undivided 2/15 interest in the lands and estate of Andrew Gassin, Sr., by reason of the failure of the latter's will to make provision for his children or to express an intent to cut them off. Section 1570, Okla. St. 1931. She ignores the jurisdiction of the county court to determine, by decree of distribution, the rights of Andrew, Jr., as well as other children of the deceased. Such jurisdiction must be affirmed, however, upon the ground that in such cases and on settlement of the executrix's final account and

application for decree of distribution, proper notice being given, it rests with the pretermitted child to advance his claims. This is the practice indicated by section 1571, Okla. St. 1931, and its propriety is affirmed by Riley v. Collier, 111 Okla. 130, 238 P. 491; Lowery v. Hawker, 22 N. Dak. 318, 133 N. W. 918, 37 L. R. A. (N. S.) 1143; Re Barker's Estate, 5 Wash. 390, 31 P. 976; Re Frandsen's Will, 50 Utah, 156, 167 P. 362. Failing to heed the notice which all the world must note, an unknown or pretermitted heir must abide the consequences, save that he may appeal or otherwise proceed as allowed by statute for the vacation of such a decree or upon equitable grounds. Section 1359, Okla. St. 1931. Since the decree of distribution awarded the lands to May L. Gassin, Andrews, Sr.'s, widow, and no proceedings for the vacation of it having ever been had, Mrs. McJunkin cannot prevail upon this phase of the case unless the county court lacked jurisdiction to enter it for reasons other than those considered.

It was contended by her, however, that the decree of distribution upon the estate of her grandfather was without the county court's jurisdiction because of lack of proper notice. The record discloses that notice of final settlement of the accounts of executrix and of intended distribution of the estate was published but nine full days before the day upon which the decree was entered. The statute then in force (now section 1345, Okla. St. 1931) required the giving of notice of hearing of final account and petition for distribution for two successive weeks. Such notice was a necessary antecedent to the decree of distribution. Sections 1358, 1359, Okla. St. 1931.

Publication of the required notice for but nine days was not compliance. A decree of distribution entered without notice thereof is void. Jent v. Jent, 145 Okla. 74, 291 P. 529; Baker v. O'Riordan, 65 Cal. 368, 4 P. 232; Re Grider's Estate (Cal.) 21 P. 232. Notice of a hearing therefor published for a substantially lesser period than required is insufficient to confer jurisdiction to enter such a decree. Teynor v. Heible, 74 Wash. 222, 133 P. 1, 46 L. R. A. (N. S.) 1033, and note; Re Hoscheid's Estate, 78 Wash. 309, 139 P. 61. While Barrette v. Whitney, 36 Utah, 574, 106 P. 522, 37 L. R. A. (N. S.) 368, holds that a decree of distribution is within proper limits of the court's jurisdiction and publication of notice thereof for less than the statutory period is only an irregularity, where it appears that due notice of the initial proceedings in probate has been given, our own decisions indicate that it is upon the publication notice required by section 1345, supra, that the jurisdiction to enter such a decree rests. Hogan v. Superior Court, 122 Okla. 295, 254 P. 966, 967; National Exploration Co. v. Robins, 140 Okla. 260, 283 P. 236. Failure to have given proper notice, therefore, rendered the decree of distribution entered upon the estate of Andrew Gassin, Sr., void. Andrew Gassin, Jr., took an undivided 2/15 interest in the litigated lands. Mrs. McJunkin succeeded to this interest upon her father's death, and she is therefore entitled thereto except that she be debarred from claiming it because of prescriptive title in plaintiffs, which the latter contend.

Section 11729, Okla. St. 1931, defines a title by prescription as being one which has ripened by occupancy of land for such period of time as would bar an action for the recovery thereof. Exclusive, continuous, open and notorious possession, under claim of right, hostile to all others, for 15 years will operate to confer good title upon the occupier. Section 99, subd. 4, Okla. St. 1931; Wade v. Crouch, 14 Okla. 593, 78 P. 91; McMann v. McMann, 123 Okla. 26, 252 P. 1093; Stolfa v. Gaines, 140 Okla. 292, 283 P. 563. Decree of distribution of the estate of Andrew Gassin, Sr., was entered July 1, 1912, to which date May L. Gassin appears to have held possession of the lands as executrix of her deceased husband's estate. Such prior possession as she enjoyed as executrix would not be adverse nor hostile to the rights of those entitled to participate in the estate. Spotts v. Hanley, 85 Cal. 155, 24 P. 738, 741; McCelvey v. McCelvey, 15 Tex. Civ. App. 105, 38 S. W. 473; Hart v. Kendall, 82 Ala. 144, 3 So. 41. The ineffective decree of distribution recited a finding that the lands were homestead, and under it May L. Gassin took, continuing in possession thereof until her death in 1919. Her acts of possession consisted in occupancy, payment of taxes, utilization of the rents and profits for her own account, and otherwise such usual and ordinary incidents as follow the possessory right enjoyed pursuant to section 1223, Okla. St. 1931, as the widow of Andrew Gassin, Sr. To start the running of the statute of limitations in such a case, the acts of the possessor of the land must be of such certain disloyalty and hostility to the remainderman — in this instance, Andrew, Jr., and, later, Mrs. McJunkin, his heir at law—as would preclude want of

knowledge upon his part of the adverse claim of the occupier. Acton v. Culbertson, 38 Okla. 280, 132 P. 812; Baldridge v. Caulk, 110 Okla. 185, 237 P. 453; Moore v. Kelly, 57 Okla. 348, 157 P. 81. Possession of a life tenant will be referred to his right thereunto, unless his conduct demonstrates a clear purpose to infringe the remainderman's right. Baldridge v. Caulk, supra. It is not to be presumed that his possession is adverse to the owner of the subsequent estate. Lincoln v. Herndon, 141 Okla. 212, 285 P. 120. No act evinced a purpose on Mrs. Gassin's part to exclude Andrew, Jr., and the other children from the remainder until her will, made in 1918, in which she assumed the right to dispose of it as she chose, was offered for probate. From this date, the trial court correctly held the possession of plaintiffs to have been hostile and adverse to the rights of Mrs. McJunkin. Since the instant action was begun and the right of Mrs. McJunkin asserted within less than 15 years from that time, it follows that plaintiffs' claim of title by prescription must fail.

By the will of May L. Gassin, admitted to probate following her death in 1919, the lands in controversy were devised to the four plaintiffs. Andrew, Jr., was left $1. The latter was presumptively dead at the time, 'as found by the trial court. The legacy to him was void. 69 C. J. 1066. Mrs. McJunkin, his sole issue, was not mentioned in the will. She was left to inherit that portion of Mrs. Gassin's estate which her father would have taken had he been alive. Section 1570, Okla. St. 1931; Re Ross Estate, 140 Cal. 282, 73 P. 976; Re Barter's Estate, 86 Cal. 441, 25 P. 15. But she made no claim for it. Decree of distribution, upon proper notice, was passed confirming the land to plaintiffs under the will. By direction of statute this decree was "conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal." Section 1359, supra. However reprehensible it may have been for Mrs. McJunkin's aunts and uncles, who knew of her existence and could have learned her whereabouts, to have refrained from seeing to it that her interest in the estate was preserved, there was no fraud which prevented an appearance in her behalf. The notice prescribed by statute being given, there was no further duty owed her by them. Monk v. Morgan, 49 Cal. App. 154, 192 P. 1042. The statute required no personal notice. It is constitutional. Goodrich v. Ferris, 214 U.

S. 71, 53 L. Ed. 914. When the required notice is given, hearing had, and decree entered, though erroneous, the latter is invulnerable to collateral attack, except as it may be vacated pursuant to statute or set aside for extraneous fraud. It concludes unknown heirs. National Exploration Co. v. Robins, 140 Okla. 260, 283 P. 236; Teague v. Smith, 85 Okla. 12, 204 P. 439; Hogan v. Superior Court, 122 Okla. 295, 254 P. 966; Mudd v. Perry, 108 Okla. 168, 235 P. 479; Wood v. Vann, 125 Okla. 121, 256 P. 918. Though Mrs. McJunkin was then a minor, it was open to her to have applied for vacation of the decree within one year from the time she attained majority. Section 431, Okla. St. 1931; National Exploration Co. v. Robins, supra. This she did not do, and no showing was made that she was thereunto prevented by plaintiffs. That the petition to probate May L. Gassin's will described Andrew, Jr., as yet alive and residing at Avarda, Wyo., neither of which was true, did not defeat the court's jurisdiction to decree distribution. As a pretermitted heir she possessed no right to oppose probate of the will, which was otherwise effective. Riley v. Collier, 111 Okla. 130, 238 P. 491; Lowery v. Hawker, 22 N. D. 318, 133 N. W. 918, 37 L. R. A. (N. S.) 1143; Re Barker's Estate, 5 Wash. 390, 31 P. 976; Re Frandsen's Will, 50 Utah, 156, 167 P. 362. Jurisdiction to distribute the lands depended upon notice of hearing to that end, which was given. This notice, in effect, summoned the world. We conclude that the decree of distribution of the estate of May L. Gassin was binding, effective, and conclusive, within the jurisdiction of the county court, and that no lawful reason has been shown why it should not be respected herein. Since that decree invested all of Mrs. Gassin's title to her undivided one-third interest in the lands in the plaintiffs, Mrs. McJunkin was excluded from any share of that estate. The lower court erred in failing to so hold.

It follows from what has been said that the judgment of the court below decreeing Mrs. McJunkin to be the owner of an undivided 1/5 interest in the lands in controversy should be modified by decreeing her an undivided 2/15 interest therein and none other. As so modified, it is affirmed.

The Supreme Court acknowledges the aid of Attorneys E. P. Marshall, Rollin E. Gish, and T. Austin Gavin in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and

approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Marshall and approved by Mr. Gish and Mr. Gavin, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, PHELPS, CORN, and GIBSON, JJ., concur.