**RILEY et al. v. COLLIER et al.**

No. 14632—Opinion Filed Dec. 30, 1924.

Rehearing Denied July 14, 1925.

1. **Wills—Pretermitted Grandchildren—Intention to Omit—How Determined.**

Formal wills being required to be in writ

ing, the intention of the testator to omit certain children of a deceased son, who are not mentioned in the will, must be determined from the language of the will itself, aided by attendant circumstances, excluding evidence of oral declarations by the testator at variance with or in amplification of the language of his written testament.

**2. Same—Effect on Will.**

Failure of a testator to mention in his will certain children of a deceased son, unless the intention to omit is to be found within the four corners of the instrument (aided by a consideration of attendant circumstances), results in intestacy as to them, but this does not invalidate the will if otherwise valid, such grandchildren being fully protected by the provisions of Comp. Stat. 1921, secs. 11255, 11256.

**3. Wills—Trust Provision—Estate of Trustees—Ineffectual Restraints.**

When a testator by apt language in his will has created an active express trust, vesting in his trustees the full legal title to the property devised, and it is clearly his intention that in the execution of the trust his trustees shall sell the property and use the proceeds according to their judgment for the benefit of the cestui que trust named in the will, and it is further apparent from the language used that it was the intention of the testator that the trust should be fully executed and discharged during the lifetime of the trustees named, any attempted restraint on alienation by the trustees for an indefinite and uncertain period is subordinate to the clear intention to devise the absolute title, and being subordinate to this intention and inconsistent with the estate devised is ineffectual, and will be disregarded by the court in construing the will.

**4. Charities—Wills—Benevolent Corporations—Power to Take Under Will—Equitable Conversion.**

In this state benevolent corporations are authorized by Comp. Stat. 1921, sec. 5570, to take and hold property acquired in any manner, except that they may not hold real property not reasonably necessary to the business and objects of the corporation, and where a testator has devised certain real estate to trustees to be sold by them and the proceeds to be applied to the needs of a certain benevolent institution as "in their judgment is at the time most beneficial," such devise constitutes an equitable conversion of such real estate under Comp. Stat. 1921, sec. 11285, and such cestui que trust has power to take and the testator has power to give under section 5570, supra.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Creek County; John L. Norman, Judge.

Action by Mary Helen Collier et al., as heirs at law of John Collier, deceased, against Mary Frances Collier, widow, and J. W. Riley et al., trustees, to have declared void the last will and testament of John Collier, deceased. Judgment for plaintiffs, and the defendant trustees bring error. Affirmed in part and reversed in part.

John Collier died at Bristow, in Creek county, October 13, 1919, and his will was duly admitted to probate by the county court of Creek county November 25, 1919, and Mary Frances Collier, his widow, who was named as executrix in his will, duly qualified and entered upon the discharge of her duties as such executrix. September 23, 1920, this action was commenced in the district court of Creek county by Harry Collier, Florence Collier Downey, Maymie Collier O'Niel, surviving children, and Mary Helen Collier, John Carson Collier, and Joseph Maurice Collier, children of a deceased son of John Collier, as plaintiffs, to have the last will and testament of John Collier, deceased, declared void and to quiet the title to all of his estate in the plaintiffs and in the widow as heirs at law of the deceased.

After issues were joined the case was tried to the court March 1, 1923, upon an agreed statement of facts and the oral testimony of the witness who wrote the will in question for the testator. The agreed statement of facts and the oral testimony will be hereafter referred to as they become pertinent and material to the discussion of the legal questions involved. The will in question, omitting the formal parts, consists of four paragraphs, as follows:

"First. I do give, will and devise and bequeath unto my beloved wife, Mary Frances Collier, all of my personal property, including notes, mortgages, horses, cattle and personal property of every kind and description; to have and to hold and to use as her own said property during the life of her, the said Mary Frances Collier, and on her demise any of said personal property including notes, mortgages, bonds, moneys, cattle and horses remaining undisposed of shall pass to my residuary legatees under the terms and conditions hereinafter set forth.

"Second. I do give, will, devise and bequeath unto my beloved wife, Mary Frances Collier, all of my real property which I may have, own or hold at the time of my death for the sole and only purpose that the said Mary Frances Collier shall have the use thereof during her natural life, provided that she, the said Mary Frances Collier, shall not dispose of said real property and shall at all times keep the taxes and assessments, of every nature and description, paid thereon, and upon the death of her, the said

Mary Frances Collier, said real estate shall immediately pass unto my residuary legatees under the terms and conditions hereinafter mentioned, it being my desire that my real property shall not be sold so long as gas or oil is found therein. That all my just debts shall be paid and satisfied; and I do hereby appoint and will that my beloved wife, Mary Frances Collier, make provision for having at least twenty masses said for the repose of my soul, and in the event of death of the said Mary Frances Collier, I request that my residuary legatees make such provision for masses to be said for both of us.

"Third. Upon the death or demise of her, the said Mary Frances Collier, there shall be paid out of my estate, and I hereby give, will and bequeath unto Mary Mannering, the sum of one dollar ($1.00); to Thomas Walls the sum of one dollar ($1.00); to Denna Moore, the sum of fifty dollars ($50.00); to Florence Downing the sum of fifty dollars ($50.00); to Maymie O'Niel the sum of fifty dollars ($50.00); to Omer Collier the sum of fifty dollars ($50.00).

"Fourth. That upon the demise of her, the said Mary Frances Collier, it is my will that, and I do hereby give, will and bequeath all of the residue of my property and the property that shall be left as herein specified on the demise of her the said Mary Frances Collier, to the following persons: John W. Riley, Mont F. Highley and Frank C. O'Neil, all of Oklahoma City, Oklahoma, to be held by them in trust for the sole and exclusive use and benefit of the Catholic Orphans Home situated in Oklahoma county, Oklahoma, to be applied by said trustees to the needs of such institution which in their judgment is at the time most beneficial. The trustees herein appointed are not to sell or dispose of any of the lands devised by me until such time as it is clearly demonstrated that there is no oil or gas in or under said lands. In the event that oil or gas, or either of them, is found on any of said lands, the same shall not be sold or disposed of by the said trustee so long as such oil or gas or either of them, is found in paying quantities. In the event it is determined that these lands do not produce oil or gas, or either of them, the signature of the said trustees, or any two of them, will be sufficient to pass title thereto."

Judgment and decree was entered by the trial court sustaining all of the contentions of plaintiffs, decreeing the will absolutely void and quieting the title to the estate in the plaintiffs and in the widow, and ordering the same distributed according to the laws of descent and distribution of this state. From this decree the defendant trustees have brought the case to this court by petition in error with case-made attached for review. After the case was lodged in

this court the widow, Mary Frances Collier, asked leave to join in the petition in error and to file her brief herein, which application was granted by the court. The parties will, therefore, be referred to hereafter as plaintiffs and defendants, respectively, as they appear in the trial court. It is stipulated that the Catholic Orphans' Home referred to in the fourth paragraph of the will is St. Joseph's Orphanage.

Mont. F. Highley, T. Austin Gavin, and Horace H. Hagan, for plaintiffs in error.

C. F. Chapman and Hughes & Foster, for defendants in error.

Opinion by LOGSDON, C. This is a proceeding in equity to cancel, set aside, and hold for naught as being void the last will and testament of John Collier, deceased, and to quiet the title to the estate of deceased in plaintiffs and in the widow of the deceased as the lawful heirs and distributees under the laws of descent and distribution of this state. In this character of action this court is authorized to examine the entire record and to consider and weigh all the evidence, and after so doing to affirm or reverse the decree, or to render or cause to be rendered such decree as the record, the evidence, and the law authorize. Pevehouse v. Adams, 52 Okla. 495, 153 Pac. 65; Marshall v. Grayson, 64 Okla. 45, 166 Pac. 86; Martin v. Bruner, 64 Okla. 82, 166 Pac. 397; Lee v. Little, 81 Okla. 168, 197 Pac. 449; Keechi Oil & Gas Co. v. Smith, 81 Okla. 266, 198 Pac. 588.

Four propositions are urged by defendants for reversal of this case, as follows:

"First. The question as to the corporate capacity of St. Joseph's Orphanage to take the beneficial use of the real estate involved cannot be raised in this action.

"Second. Section 6605, Revised Laws 1910, and article 4, chapter 65, Revised Laws 1910, have no application to a charitable trust, such as has been created by the will in question.

"Third. Even if that portion of the disputed will which directs the nonalienation of the land devised should be invalid as transgressing section 6605, Revised Laws 1910, nevertheless, such invalidity would not strike down the entire trust created by the will, but only the provision relating to nonalienation.

"Fourth. The testimony of Mr. Laux shows that it was the intention of the testator not to make any devise or bequest to the children of his deceased son, Omer Collier, and, therefore, the fact that they are not mentioned in the will does not bring about the situation that as to them the

testator will be deemed to have died intestate."

Conversely to these propositions, it was urged against the validity of the will by plaintiffs in the trial court, and now insisted here:

"First. The fourth paragraph of the testator's will, by its form and terms, suspends the power of alienation, and by its form and terms, suspends the ownership of the beneficial estate, for an unlawful length of time, and that this paragraph is void and contrary to law.

"Second. That the Catholic Orphans' Home, the beneficiary under the fourth paragraph, or the St. Joseph's Orphanage being an Oklahoma religious and charitable corporation, the testator did not have the testamentary power to devise, nor the corporation the power to take, under the Constitution and laws of the state, and that this paragraph is void and contrary to law.

"Third. That the fourth paragraph of the will, and the ends, aims and purposes therein expressed, are and were essential to the plan and scheme, and its failing, the parts remaining no longer express his will and intention, and that the whole will must fail.

"Fourth. That the provision in the will for Omer Collier, when read in connection with the other provisions of the will, does not show an intention to omit the plaintiff grandchildren.

"(a) That parol evidence is not admissible to prove an intention to omit.

"(b) If the contention under subdivision (a) is overruled, then it is contended that the evidence does not warrant a finding that testator intended to omit his grandchildren."

These are the respective contentions of the parties and present clearly the questions which this court is called upon to determine. In their determination the propositions stated by plaintiffs against the validity of the instrument will be used as the basis for their discussion. For convenience the question presented by the fourth proposition will be first considered. In brief of plaintiffs the argument is preceded by this statement:

"If there is one matter above any other which I would hope to keep before this court it is that these objections are based solely upon the provisions of our statutes. Unless this cause is decided under the statutes of this state, it will not be decided upon the objections made by the plaintiffs to the testator's will."

The language of the statutes and the applicable decisions of this court should always preferably prevail in determining the meaning of any legislative enactment. The

section of the statute here to be considered is section 11255; Comp. Stat. 1921. together with other related sections to be hereafter cited. This section reads:

"When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator, as if he had died intestate, and succeeds thereto as provided in the preceding section."

Upon the hearing the trial court tentatively, and over objection and exceptions of plaintiffs, admitted testimony of declarations made by the testator at the time the will was being prepared. This testimony was offered by defendants as tending to show that the omission of the grandchildren from the will was intentional on the part of the testator. No final ruling by the court as to the admissibility of this testimony is disclosed by the record, and it will be presumed that the court considered it but determined that it was insufficient for the purpose for which it was offered.

It is considered by this court that this character of testimony is inadmissible in this character of action for the following reasons:

Formal wills, such as the one here involved, are required to be in writing (Comp. Stat. 1921, sec. 11231); in case of uncertainty, arising upon the face of the will, the testator's intention is to be ascertained from the words of the will, excluding his oral declarations (sec. 11265, supra); even mistakes or omissions apparent on the face of the will must be corrected by reference to the will itself, excluding declarations of intention by the testator (sec. 11287, supra).

These various provisions evince a clear legislative intention to give effect to the testamentary wishes of a decedent in so far as those wishes have been clearly expressed or can be fairly interpreted from the language of the testator solemnly declared by him to be the last expression of his wishes concerning the disposition of his property. To supply omissions or to import unexpressed intentions not reasonably to be gathered within the four corners of the instrument, by the admission of extrinsic evidence, is not to construe and interpret the written will, but is to make a new will based on the fallible understanding of auditors to oral declarations, or on the biased and prejudiced interpretations of such oral declarations by persons pecuniarily or otherwise interested. This

character of testimony is not admissible in the construction and interpretation of written instruments expressing the purposes and intentions of living persons, who could, but may not, speak for themselves. The logic of the situation on the interpreting of a will is even more cogent in imposing silence on those who would assume to express an intention of the testator at variance with or in amplification of his written will.

It is stipulated in the sixth paragraph of the agreed statement of facts that the testator bequeathed the sum of $50 to each of his three living children, and a like amount to his dead son, Omer Collier; that Omer Collier died long before the date of execution of the will, and that testator knew this fact. It is further stipulated that each of these four legacies were to children of a former marriage, and that testator had no other children.

Within the four corners of the will there is no intrinsic evidence that the testator knew of the existence of these grandchildren. There is evidence in the record that for many years there had been an estrangement and antagonism between the testator and his four children. The bequest of $50 to a child whom he knew to be dead raises an uncertainty on the face of the will which authorizes this court to consider the above-mentioned circumstances, attending its execution, in ascertaining the intention of the testator. (Section 11265, supra.) With this estrangement existing and this antagonism rankling it is conceivable that no communication had been maintained between him and his children, and that he was ignorant of the birth of children to Omer during his lifetime. However this may be, it cannot be assumed that the mention of Omer in the will demonstrates that he also had these grandchildren in mind and that they were intentionally omitted. Intention is evidenced by acts and language rather than by passivity and silence.

It is therefore concluded upon this branch of the case that these grandchildren were pretermitted by the testator unintentionally in the preparation, execution, and publication of his will, and they are therefore entitled to the share of the estate which their father, if living, would have taken, had their grandfather died intestate, by virtue of the provisions of section 11255, supra. However, this does not render the will void, as held by the trial court, but their shares are to be carved out of the estate as provided by section 11256, which reads:

"When any share of the estate of a testator is assigned to a child born after the making of a will, or to a child, or the issue of a child, omitted in a will as hereinbefore mentioned, the same must first be taken from the estate not disposed of by the will, if any; if that is not sufficient, so much as may be necessary must be taken from all the devisees, or legatees, in proportion to the value they may respectively receive under the will, unless the obvious intention of the testator in relation to some specific devise or bequest or other provision in the will, would thereby be defeated; in such case such specific devise, legacy or provision may be exempted from such apportionment, and a different apportionment, consistent with the intention of the testator, may be adopted."

This section has received consideration by this court in connection with section 11254 on rehearing in the case of Roberson et al. v. Hurst, 80 Okla. 118, 194 Pac. 898, and the construction placed upon section 11256 in that opinion is here followed.

All three of the remaining propositions sought to be maintained by each side involve the validity of the trust feature of the will, and present the incidental question of whether the will, viewed from any standpoint transcends the rule against perpetuities.

Under the first and second paragraphs of the will a life estate in his widow is created as to all personal and real estate, with remainder over to his residuary legatees. Plaintiffs contend that the prohibition in the second paragraph against sale of the real estate by the life tenant is a suspension of the power of alienation. This contention is not deemed to be correct. The power of alienation or disposition is not an incident of a life estate unless expressly so declared in the grant or devise creating the estate. Rood on Wills, sec. 543; 10 R. C. L., p. 653; Porter et al. v. Porter et al., 97 Okla. 231, 222 Pac. 971. The duty of the life tenant to pay the taxes and assessments which may accrue against the property is a statutory duty in this state. (Comp. Stat. 1921, sec. 8448.) Thus the prohibition and direction expressed in the second paragraph concerning the real estate are but applications of legal rules which would apply without these expressions.

Is there an unlawful suspension of the power of alienation under the fourth paragraph of the will? All of the residuary estate, after the termination of the life estate, and the payment of legacies under the third paragraph, is vested in three named trustees. Their title to the property is full and absolute, subject only to the terms of the trust reposed in them. These trust features are

two. Under the second paragraph a trust is created in this language:

"And I do hereby appoint and will that my beloved wife, Mary Frances Collier, make provision for having at least twenty masses said for the repose of my soul, and in the event of death of the said Mary Frances Collier, I request that my residuary legatee make such provision for masses to be said for both of us."

In the fourth paragraph the second trust feature is expressed in this language:

"That upon the demise of her, the said Mary Frances Collier, it is my will that, and I do hereby give, will and bequeath all of the residue of my property and the property that shall be left as herein specified on the demise of her, the said Mary Frances Collier, to the following persons: John W. Riley, Mont F. Highley and Frank C. O'Neil, all of Oklahoma City, Oklahoma, to be held by them in trust for the sole and exclusive use and benefit of the Catholic Orphans Home situated in Oklahoma county, Oklahoma, to be applied by said trustees to the needs of such institution which in their judgment is at the time most beneficial.".

No succession of trustees is authorized, but it is in the personal judgment of these three men, all living at the time of his death, that testator reposes his trust. That it was his intention that the trust should be discharged by them and in their lifetime is shown by the language of the last sentence of this fourth paragraph:

"In the event it is determined that these lands do not produce oil or gas, or either of them, the signature of the said trustees, or any two of them, will be sufficient to pass title."

The language of the provisions above quoted created an active and not a passive trust, although possession by the trustees was postponed. Hill v. Hill, 49 Okla. 424, 152 Pac. 1123; 1 Perry on Trusts, sec. 305; 2 Underhill on Wills, p. 1096; 2 Jarman on Wills, 293; 26 R. C. L. 1174, par. 8. Therefore, the express trust thus created is valid and enforceable under the provisions of chapter 16, Sess. Laws 1919, secs. 1 and 2 (Comp. Stat. 1921, secs. 8465, 8466), unless the attempted limitation on the power of the trustees to alienate the property renders the entire trust void under the provisions of section 8410, Comp. Stat. 1921, which reads:

"The absolute power of alienation cannot be suspended by any limitation or condition whatever, for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition. * * *"

Since it was the evident intention of the testator that the trust should be fully performed and discharged by the three trustees named, either jointly or by virtue of survivorship among them, no succession being provided for as authorized by section 3, ch. 16, Sess. Laws 1919 (Comp. Stat. 1921, sec. 8467), the restraint on alienation expressed in the fourth paragraph could not have been intended by him to operate longer than the trust itself. Comp. Stat. 1921, sec. 11265, reads:

"In case of uncertainty, arising upon the face of the will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations."

This court judicially has knowledge of the fact that at the time of and prior to the execution and publication of this will an oil and gas field of large extent and of proven productiveness had been uncovered in the vicinity of Drumright and Shamrock in the central west portion of Creek county, this being a matter of common knowledge. This court also judicially knows that the town of Bristow is in the south central part of Creek county in sections 29 and 30, township 16 north, range 9 east. Therefore, it being stipulated that the lands involved are located in section 5, T.15 N., and in sections 4 and 32, T. 16 N., all in R. 9 E., this court judicially knows that they are located near the town of Bristow and only a few miles southeast from the Drumright and Shamrock oil fields. These circumstances may be considered by this court in ascertaining the intention of the testator when he sought to limit the trustees in their power of alienation by the following language in the fourth paragraph of the will:

"The trustees herein appointed are not to sell or dispose of any of the lands devised by me until such time as it is clearly demonstrated that there is no oil or gas in or under said lands. In the event that oil or gas, or either of them, is found on any of said lands, the same shall not be sold or disposed of by the said trustees so long as such oil and gas, or either of them, is found in paying quantities. In the event it is determined that these lands do not produce oil or gas, or either of them, the signature of the said trustees, or any two of them, will be sufficient to pass title thereto."

It is evident that the testator, under the circumstances above stated, believed that his lands would be proven or condemned as oil lands during the lifetime of his trustees, a life estate in the widow preceding their possession, and that it was his intention that the lands should not be sold hastily and for

an inadequate consideration. This belief and intention has been, at least in part, already realized, for plaintiffs say at page 133 of their brief:

"The case before this court involves considerable property. The estimate fixed by the stipulation, $25,000, is very conservative. Since this litigation has been pending it has been possible to realize nearly that amount from the royalty interest upon 80 acres of this land."

However commendable may be the intention of the testator in seeking by the above restraining clause to increase the amount of his bounty to the charity dear to his heart, his power to do so must be measured by the law of this state, of which he had presumptive full knowledge. The first and last sentences of paragraph four of the will evince a settled intention to vest in the trustees the full legal title to the residuary estate devised so that a conveyance by them would pass an estate of inheritance to the grantee. There is no attempted reservation of any kind or character. Comp. Stat. 1921, sec. 11258, provides:

"Every devise of land in any will conveys all the estate of the devisor therein, which he could lawfully devise, unless it clearly appears by the will that he intended to convey a less estate."

No intention clearly appears in this will to devise a less estate to the trustees than that of the testator, which was an indefeasible estate of inheritance. Comp. Stat. 1921, sec. 8474, provides:

"Except as hereinafter otherwise provided, every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property, but may enforce the performance of the trust."

None of the subsequent sections of that article are in any way applicable to the facts here presented. Comp. Stat. 1921, sec. 11288, reads:

"Testamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death."

The language of the testator being apt language for the vesting of an absolute title to the residuary estate in the trustees, subject only to the execution of the trust, which execution was to be performed as "in their judgment is at the time most beneficial," the attempted restraint on alienation is subordinate to the manifest intention of the testator to devise the absolute title, and, being subordinate and wholly inconsistent with

the estate devised, must be rejected. Stone v. Easter, 93 Okla. 68, 219 Pac. 653.

Comp. Stat. 1921, sec. 11264, provides:

"A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent it must have effect as far as possible."

Section 11273, Id., directs:

"Of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy."

In the case of Hill v. Buckholts, Trustee, et al., 75 Okla. 196, 183 Pac. 42, Justice Johnson, in the body of the opinion, at page 203, said:

"The rule that a will may be only partially invalid, valid provisions being sustainable and those invalid may be declared so on a construction of the will by the court, is well supported by the authorities."

It is therefore concluded that the attempted restraint on alienation is wholly ineffectual because incompatible with the indefeasible estate devised. and that the trustees, on coming into possession, have good right and full power to alienate the lands devised in execution of their trust.

This leaves for consideration only the contention of plaintiffs expressed in their second proposition to the effect that under the law of this state the testator had no power to devise and the corporation had no power to take the beneficial interest in the residuary estate devised. The entire argument of plaintiffs under this contention is epitomized in the following paragraph at page 34 of their brief:

"The lands herein devised to the orphanage consist of three farms and three pieces of city property all situated in Creek county, Oklahoma. The question then resolves itself into an examination of our Constitution and statutes to determine whether or not an Oklahoma corporation, formed to acquire and hold property for benevolent, charitable and other religious purposes, as may be necessary to conduct an orphanage to teach manual training and industrial arts, can, under our Constitution and statutes, take and hold such real estate as has been herein devised."

The trouble with this contention is that plaintiffs place a wrong interpretation on the language of the testator and attribute to him a testamentary intent clearly at variance with his language. There is no apt language, even of a precatory character, which indicates an intention of the testator that title to the lands devised should ever vest in his cestui que trust.

Throughout the second and fourth para-

graphs of the will his language evinces a clear purpose that the lands should eventually be sold. In the second paragraph this is his language in reference to the residuary devise: "It being my desire that my real property shall not be sold so long as oil or gas is found therein." In the fourth paragraph, after placing the entire residuary estate in the hands of his trustees, "to be applied by said trustees to the needs of such institution which in their judgment is at the time most beneficial," he attempted to restrain the sale of the lands until they shall be proven unproductive of oil or gas, but upon that contingency arising he authorized any two of the trustees to convey. The attempted restraint on alienation is itself conclusive of his intention that the lands should be sold ultimately, because if it had been intended that title to the real estate should vest in the cestui que trust the legal estate and the beneficial interest would then be merged, and the oil and gas value of the land would become wholly immaterial in so far as it could affect the charitable purpose and intention of the testator. An intention to convert the realty being clearly apparent upon the face of the will, Comp. Stat. 1921, sec. 11285, becomes applicable:

"When a will directs the conversion of real property into money, such property and all its proceeds must be deemed personal property, from the time of the testator's death."

Plaintiffs cite and quote section 2, art. 22, Const., but this section is not considered applicable to the facts here presented from any viewpoint. Reliance is also placed on Comp. Stat. 1921, sec. 11225, which reads:

"A testamentary disposition may be made to any person capable by law of taking the property so disposed of, except that no corporation can take under a will, unless expressly authorized by its charter or by statute so to take."

The charter of St. Joseph's Orphanage provides:

"The purposes for which this corporation is formed are to acquire and hold such property for benevolent, charitable and other religious purposes as may be necessary for conducting and maintaining a Catholic Orphanage, for the purpose of training and teaching the orphans in this institution manual training and industrial arts."

Comp. Stat. 1921, sec. 5570, is a part of art. 15, relating to religious, educational, and benevolent corporations, and provides:

"All such corporations may hold all the property of the association owned prior to incorporation, as well as that acquired thereafter in any manner, and may transact all business relative thereto; but no such corporation shall own or hold more real property than may be reasonably necessary for the business and objects of the said association."

It is thus seen that both by charter and by statute the cestui que trust in this case is fully authorized to take and hold the proceeds of the residuary estate devised to the trustees upon the execution by them of the trust, the trust property being deemed and considered personalty from the date of the testator's death.

The views herein expressed and the conclusions reached are approved and disapproved respectively by about an equal number of authorities from other jurisdictions, as shown by the briefs of the respective parties. It is not considered necessary or profitable to review this long list of variant authorities, for the reason that the decision here must rest upon the exact language of our statutes, construed in the manner which the Legislature has directed and aided by the applicable decisions of this court.

It is therefore concluded upon the whole case as follows: 1. That the finding of the trial court was correct in holding that the grandchildren were unintentionally omitted from his will by the testator, and that they are entitled to take by right of representation the distributive share of their father to which he would have been entitled had their grandfather died intestate. 2. That the trial court erred as a matter of law in concluding that this omission of the grandchildren invalidated the will. 3. That the trial court erred in holding that the attempted restraint on alienation expressed in the fourth paragraph of the will was effectual and that it rendered the will void. 4. That the trial court erred in holding that the deceased, John Collier, died intestate and in decreeing that his estate should be distributed among the plaintiffs and his widow according to the laws of descent and distribution of this state. 5. That the trial court erred in holding that plaintiffs in error. John W. Riley, Mont F. Highley, and Frank C. O'Neil, trustees, have no right, title, interest, or estate in and to the residuary estate devised.

The judgment and decree of the trial court should therefore be reversed and vacated, with directions to the trial court to enter a decree in conformity with the views herein expressed.

By the Court: It is so ordered.

Note.—See under (1) 40 Cyc. p. 1092. (2) 40 Cyc. p. 1412, 18 C. J. p. 838. (3) 40 Cyc. p. 1825. (4) 11 C. J. p. 374, 13 C. J. p. 868.