**BRENNER v. MUSGROVE.**

No. 21319. May 8, 1934.

Poe, Lundy & Morgan and H. R. Duncan, for plaintiff in error.

Holcombe, Lohman & Barney, and R. A. Barney, for defendant in error.

WELCH, J. This is an appeal from an order denying plaintiff's motion for appointment of a receiver to receive certain sums which accrue to the defendant, and are paid to him quarterly by the United States Secretary of the Interior.

The plaintiff is the holder and owner of an unpaid judgment against the defendant. The defendant is an enrolled member of the Osage Tribe of Indians, and is the owner of one Osage headright. By reason thereof the United States Department of Interior pays to the defendant quarterly such sums of money as accrue to him and as are payable to him under the appropriation acts of Congress. By this action plaintiff seeks to have a receiver appointed to collect such sum from the Department of the Interior that they may be applied by the receiver in payment of the plaintiff's judgment. It is conceded by the plaintiff that such sums which accrue and are payable to the defendant cannot be reached by attachment or garnishment.

The plaintiff, in his application for the appointment of a receiver, alleges, in substance, that he was the owner and holder of the unpaid judgment; that execution had been issued and returned "nothing found"; that defendant has no property subject to execution except his Osage headright; that defendant is an Osage allottee of less than one-half blood, with a certificate of competency; and that by reason of the fact that the defendant has a certificate of competency, the sums of money payable to him as the owner of an Osage headright are subject to plaintiff's execution by and through the intervention of a receiver who should be appointed by the court with authority to collect the payments and apply them on plaintiff's judgment.

The trial court denied the application for the appointment of a receiver.

The plaintiff in his brief takes the position: (1) That the defendant has the status of a white person; (2) that as a judgment creditor plaintiff is entitled to the assistance of a court of equity; (3) that the property held by the government for the Osage Tribe of Indians is trust property, and that each Osage allottee has an equitable interest in and to the trust property, and that upon the money derived from the sale of mineral interests being placed to the individual credit of each of the Osage allottees, that part of the funds credited to those allottees of less than one-half blood with certificates of competency becomes a dry trust, and it is the mandatory duty of the Secretary of the Interior to pay such allottees their pro rata share of the funds; (4) that Congress intended that such funds should be subject to the payment of the debts of such allottees; (5) all congressional legislation evidenced and intended that members of the Osage Tribe of Indians should pay their just debts; (6) that sections 732, 733, 742-46, C. O. S. 1921, authorize and provide for the remedy sought by plaintiff.

A single question is determinative of this appeal: Is a judgment creditor of an enrolled Osage Indian allottee of less than one-half blood, and possessing a certificate of competency, entitled to have a receiver appointed, to sell such headright and apply the proceeds of such sale to payment of the judgment, or to collect the accruals on the headright and apply them to payment of the judgment?

The plaintiff, as such judgment creditor, sought such receivership in the trial court. The defendant resisted receivership. The trial court denied receivership, and the plaintiff appeals.

In DeNoya v. Arrington, 163 Okla. 44, 20 P. (2d) 563, this court held that:

· "There is no act of Congress providing for the sale, incumbering, or alienation of headrights by those of Indian blood," and

"The income accruing to the headright of a deceased Osage allottee subsequent to the death of such allottee is not an asset of the estate of such decedent which can be appropriated for the payment of the claims of creditors."

In that case this court, speaking through Mr. Justice McNeill, discussed at length the acts of Congress applicable to the Osage Tribe of Indians, and to the nature of the rights and interest of the individual members to share in the distribution of funds received from the oil, gas, and mineral rights. It would serve no useful purpose to repeat them here. The Osage allottee in that case likewise had been granted a certificate of competency. In that opinion, after referring at length to the applicable acts of Congress and the decisions of other courts in point, this court said:

"It is conceded that the creditors could not sell, attach, or in any manner effect an alienation of such headright, either prior or subsequent to the death of said allottee. To permit the estate to be held open to pay the claims of the creditors from the income of the headright in question, would be discordant to every act of Congress dealing with the headright, and permit defendants in error to do indirectly what cannot be done directly. The headright is restricted, and any income accruing thereto subsequent to the death of the allottee cannot be appropriated in any manner by the creditors of such deceased allottee. It is the 'last bulwark' that the government holds for the Osage Indian against his prodigality and improvidence. To hold otherwise would be to thwart the will of Congress on this subject, and it would quickly lead to the incurring of indebtedness by the members of the Osage Tribe of Indians equal to the value of their headrights, and thereby indirectly incumber and alienate the headright, which Congress has uniformly and steadfastly sought to safeguard and protect for the allottees and their heirs. The government is interested not only in the allottees, but also in their heirs."

The Circuit Court of Appeals of the Tenth Circuit, in the case of Taylor · v. Tayrien, 51 F. (2d) 884, decided August 3, 1931, has given a detailed discussion of the various acts of Congress dealing with the question of whether or not the headright of an Osage Indian of less than one-half blood, with a certificate of competency, passed to his trustee in bankruptcy. In that case

special observance was made of the fact that Judge Kennamer, of the Northern District of Oklahoma, being the trial judge, held that the headright did not pass, and that Judge Vaught, of the Western District of Oklahoma, held likewise in the case of In re Denison (D. C.) 38 F. (2d) 662, decided March 1, 1930.

Judge McDermott, speaking for the court, in Taylor v. Tayrien, supra, used this concluding language:

"We conclude that no Indian of the Osage Tribe has the right to alienate his headright, and that it is not subject to judicial process."

In the Denison Case, supra, Judge Vaught said:

"This act specifically provides for the sale of a headright belonging to any person not an Indian by blood, and since Congress has made no provision for the sale of an Osage headright nor for the incumbrance of an Osage headright, but has retained jurisdiction of this particular property for the benefit of the members of the tribe, it certainly could not be subject to execution. It would not be subject to the laws of the state in which it is located, and could not be considered as an asset in bankruptcy unless said bankrupt were a person 'not an Indian by blood.' "

And also in the same opinion the following:

"Nowhere in the Act of 1906, or by any amendments thereto, does an Osage Indian of less than half blood with a certificate of competency, or with restrictions removed, have the right to dispose of his trust fund or his trust estate. Congress has the right at any time to modify the provisions for holding or disposing of the trust estates of the Osages. The whole purpose of Congress has been to protect the Indian, and provide for his maintenance, his education, and his care, and the trust estate cannot be affected by any obligations created by the Indian even though he has a certificate of competency.

"This does not, even by implication, empower him to sell his interest in a trust estate. Congress has provided that at the termination of the trust period, whenever it may be, that the interest of the individual Indian shall be delivered to him intact. United States v. Thurston County (C. C. A.) 143 F. 287. Could Congress do this if taxes could attach or if liens could attach by virtue of judgments and obligations of any character."

See, also, Taylor v. Jones (C. C. A.) 51 F. (2d) 892, decided August 3, 1931.

In Taylor v. Irwin (C. C. A.) 60 F. (2d) 495, decided July 27, 1932, the Circuit Court of Appeals of the Tenth Circuit held that an Osage headright owned by a person not of Indian blood does pass to his trustee in bankruptcy. The judgment of the trial court was reversed, and Judge McDermott, speaking for the court, said:

"It is urged that Taylor v. Tayrien, and Taylor v. Jones, supra, require an affirmance. In both cases, we were dealing with Indian owners of headrights. Three principal grounds were assigned in those opinions: (a) That the bankrupts involved could not transfer their headrights. Congress has expressly authorized the bankrupt here involved to make such transfer. (b) That the policy of the government was to conserve the headrights for the support of the Indians, and to protect them against their own improvidence, a policy which has no application to whites. Levindale Lead & Zinc Mining Co. v. Coleman, 241 U. S. 432, 36 S. Ct. 644, 60 L. Ed. 1080; Pettit v. Commissioner (C. C. A. 10) 38 F. (2d) 976. (c) Departmental construction, which, as set out in Taylor v. Tayrien, has drawn a distinction between Indian and white owners of headrights."

The questions involved in this case are so thoroughly covered in the authorities cited, and particularly in De Noya v. Arrington, supra, that we deem any further discussion here unnecessary. We observe these holdings, then, that as to the Osage Indian by blood, though possessing a certificate of competency, his headright during his lifetime cannot be sold, alienated, or incumbered, and that his headright does not pass to the trustee in bankruptcy and is not subject to judicial process, and that the income accruing subsequent to the death of such allottee is not an asset of the estate. From these conclusions it seems patent that a judgment creditor could have no right whatever to have a receiver appointed to receive the income accruing to the headright for an indefinite period, and thus in effect impress a judgment lien upon the future income of the headright. We, therefore, conclude that the opening question must be answered in the negative, and that the trial court properly denied plaintiff's application for appointment of a receiver to sell the headright or to collect the income accruing thereon for the benefit of the judgment creditor.

In the plaintiff's brief it is urged that Congress intended that members of the Osage Tribe of Indians should pay their debts. In this connection we observe and approve the following quotation from the Denison Case, supra:

"Counsel in their brief urge strongly that Congress has provided that Osage Indians shall pay their debts, and that equity shall be done, but the language of the Act of 1906 is clear, it is unambiguous, it is plain, and the creditors of Osage Indians have an opportunity to know the rights of the Indians, and when they deal with the Indians they deal with full knowledge of the limitations which Congress has placed upon the alienation of their property."

And the following quotation from Taylor v. Tayrien, supra:

"Appellant urges that section 6 of the 1929 act makes provision for paying the debts of restricted Indians from their credits, and that, a fortiori, Congress must have intended that unrestricted Indians should pay their debts. Several sections deal with the payment of debts of restricted Indians; but restricted Indians were not paid all of their share of the quarterly accruals, and section 6 does not attempt to subject mineral rights to debts, but provides only that the debts shall be paid, when approved by the Superintendent, 'out of the money of such Indian appearing to his credit.' Furthermore, the unrestricted Indian could sell or mortgage his surplus or homestead; and since unrestricted Indians have valuable property to which creditors may look, Congress may have thought creditors of restricted Indians were therefore entitled to a consideration not due to creditors of the unrestricted. But if there is an anomaly in the situation, it is for Congress to correct."

The action of the trial court is affirmed.

RILEY, C. J., and SWINDALL, McNEILL, and BAYLESS, JJ., concur.