### In re REVARD'S ESTATE.
### REVARD et al. v. REVARD et al.

No. 26050.   Dec. 22, 1936.

H. P. White, for plaintiffs in error.

L. A. Justus, Jr., James P. Devine, and Humphrey & Spence, for defendants in error.

PHELPS, J. The decedent over whose estate this controversy is waged was a member of the Osage Tribe of Indians, of less than half blood, to whom a certificate of competency had been issued. He had lived in Texas for 15 years prior to his death, in which state, on January 26, 1922, he executed the will involved herein. The will was approved by the Secretary of Interior, prior to probate, in accordance with the federal statute hereinafter quoted. Testator died in the state of Texas, where he had executed the will, on June 25, 1925, which was about three and a half years after the will was executed.

All of the estate owned by testator, except that hereinafter noted, was located in the state of Texas, and the will was first filed for probate there. Testator had no estate in Oklahoma except one and a fractional headrights in the proceeds from the Osage lands which are located in Oklahoma. His will was accordingly filed for probate in Osage county, and was admitted to probate. This appeal is from the judgment of the district court of that county, by certain of his children by a former marriage, and two children of a deceased child of his by a former marriage. The grandchildren (last mentioned above) contend that the will is invalid as to them because they were not mentioned therein, and that therefore they are entitled to that share of his estate into which they would have come by the laws of intestacy.

Testator was married three times, and his third wife survived him. By each of these wives he had children. The disposition provided in the will may generally be stated thus: All of his estate, of whatever character, was bequeathed and devised to his surviving wife for the term of her natural life, and at her death the same to vest in his children by that marriage; the children and children of deceased children by the former marriages (named by him in the will, with the exception of the two plaintiffs in error grandchildren) to receive $5 each. Omitting immaterial parts which throw no light on the testamentary intent, the will is as follows:

"3. It is my will and desire that all my personal property, I may die seized or possessed of, shall pass to and vest in my beloved wife Nell Revard. I give, bequeath and demise to my beloved wife Nell Revard, all the personal property I may own or be interested in at the time of my death, for her life time, and on her decease, to be equally divided to my children, share and share alike, of whom she Nell Revard is the Mother.

"4. It is my will and desire that my Real Property, I may die seized and possessed of, shall pass to and vest in fee simple in my beloved wife Nell Revard for Her Life Time. I give, bequeath and demise to my beloved wife Nell Revard, all the real property I may own or be interested in at the time of my death, and to manage the same, for her life time, and on her decease, to be equally divided, share and share alike, to my children, of whom, she, Nell Revard is the Mother.

"5. I desire and request that the Osage Indian Superintendent, Pawhuska, Oklahoma, make over and pay to my beloved wife Nell Revard, all annuity, bonuses and royalties and all other income derived from the sales of oil leases by the United States Government for the balance of her natural life, and on her decease I desire and request the Osage Indian Superintendent to make over and pay all annuities, bonuses and oil royalties and all other income derived from sales of leases by the United States Government to my children, same to be equally divided, share and share alike to My children, of whom, my beloved wife Nell Revard is the Mother. * * *

"8. I will, bequeath and devise to my Grand Son, Louis Lyle Hayes, son of Elnora Hayes, Margaret Ann Fenton; Curtis Revard. Carl Revard; Mrs. O'Dell Denoya; Nellie Isabelle Revard; Edgar Todd Revard; and Gladys Revard the sum of Five ($5.00) Dollars in CASH and no more."

One of the sons by a former marriage (Carl Revard), to whom testator bequeathed $5 in his will, had been dead nearly three years when testator executed the will. The record does not reveal whether testator knew that that son was dead. (Testator did, however, by the above will, bequeath money to a child, Hayes, of another deceased child of his, naming such grandchild, which suggests that probably he did not know that this particular son was dead when he executed the will.) This deceased son, Carl Revard, left two children, as above stated, and these children were nowhere mentioned or provided for in the will, either in general or specific terms. In the decree of distribution the trial court ordered that they each receive $2.50 by right of representation. The question which we now consider is whether the will is invalid as to such grandchildren only, so that they may elect and take under the laws of succession and distribution.

Section 1570, O. S. 1931, provides:

"When any testator omits to provide in his will for any of his children, or for the issue of any deceased child unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator, as if he had died intestate, and succeeds thereto as provided in the preceding section."

Under the terms of the above statute an omitted grandchild, being the issue of a deceased child of the testator, inherits under the laws of intestacy "unless it appears that such omission was intentional." In its reduced form, the question then is: (1) Does it appear (2) that the omission was intentional? In construing this statute it is important to observe that the test is not whether it was an unintentional omission, such as an oversight. Rather, the thought to keep in mind is that the inquiry is whether **"it appears"** that the omission was **"intentional."**

There is undeniably an omission. If it is to be held that such omission was "intentional", from where does such inference arise? It could possibly be argued that the omission was unintentional, but that is not the test. There is no indication that testator even knew of the existence of these grandchildren. Possibly had he known of their existence, or had he known that his son, their father, was dead, he would have provided for them, but since he failed to do so, it is not for us to reach back and change or add to the terms of the will by supplying the omission.

This court has already held that the fact that the testator did leave $5 to their father does not change the legal significance of his failure to provide for the children of the deceased son. It is unnecessary to discuss this question, for it has long been decided in this

jurisdiction. In Riley v. Collier, 111 Okla. 130, 238 P. 491, a testator bequeathed $50 to each of his three living children, and a like amount to his dead son. The son had died long before the date of the execution of the will, and testator knew that fact. Nevertheless, we held that even though he knew the son was dead, and even though he made a bequest to him, such facts did not warrant the presumption, even with the aid of attendant circumstances, that the omission of the grandchild was intentional. It was held that the omitted grandchild would take under the laws of intestacy. Riley v. Collier was later followed, as to children, by Courtney v. Daniel, 124 Okla. 46, 253 P. 990, and then still later the doctrine announced in both cases was modified by Spaniard v. Tantom, 131 Okla. 75, 267 P. 623. The modification, however, further tightened the rule, instead of lightening it, by holding that circumstances attendant to the execution of the will could not be considered when determining whether the omission was intentional. The rule announced in the latter decision is that the intention of a person to disinherit by will his children, or children of his deceased children, must appear from the four corners of the will, and that circumstances under which the will was executed cannot be taken into consideration, nor may extrinsic evidence of any character be admitted to establish such intent. There being no mention of the grandchildren in the will, and it not appearing from the face thereof that the omission was intentional, the doctrine announced in Riley v. Collier, supra, results in invalidation of the will as to these two grandchildren, necessitating that they inherit the same share of the estate as if the testator had died without a will.

No theory or statute is advanced to support the contention that these grandchildren should share equally the $5 bequeathed to their deceased father "by right of representation." Keeping in mind that the father of these grandchildren (son of testator) died before the **execution** of the will, it is at once apparent that section 1574, O. S. 1931, was not intended to cover such a situation, for it manifestly refers to a situation where testator devises to a child of his, or to some other relation, and then that devisee dies before the testator dies. It reads:

"When any estate is devised to any child, or other relation of the testator, and the devisee dies before the testator, leaving lineal descendants, such descendants take the estate so given by the will, in the same manner as the devisee would have done had he survived the testator."

The intestacy which is created by the present situation is not, however, a total intestacy; it is one which is limited to carrying out of the whole estate just that portion or proportion as would represent the share of these two grandchildren if the testator had died without a will. In other respects and for other purposes the validity of the will is not affected. Sections 1571, 1579, 1588, O. S. 1931.

But notwithstanding the foregoing, it is urged upon us that the judgment is correct, because of the rule that the validity and interpretation of wills is governed, when relating to personal property, by the law of the testator's domicile at the time of his death (section 1534, O. S. 1931), and that in Texas he is not required to remember his children or grandchildren in his will. In this connection considerable debate is had by the parties: those favoring the judgment contending that an Osage headright is personal property, while plaintiffs in error contend that it is real property. It is unnecessary for us to decide whether such headright is real or personal. Regardless of which it is, our study of the federal statute applicable, and similar statutes governing the testamentary disposition of property by Indians, has convinced us that Congress in permitting Osage Indians of a certain class to dispose of this class of property by will has attached the limitation thereon that such disposition shall be in accordance with the laws of the state of Oklahoma. If we be correct in our conclusion in that respect, it then becomes immaterial whether the headright is personal property, for, even so, its testamentary disposition would be governed by the laws of Oklahoma, rather than the laws of Texas which, we are told, do not require the testator to provide for his children or grandchildren in such cases as this.

In the first place, it must be remembered that Congress has never relinquished control of the tribal funds of the Osage Indians, nor has it ever relinquished its control of Osage headrights. Brenner v. Musgrove, 168 Okla. 247, 32 P. (2d) 740; DeNoya v. Arrington, 163 Okla. 44, 20 P. (2d) 563; Taylor v. Tayrien, 51 Fed. (2d) 884. The sale, incumbering or alienation of Osage headrights is not authorized except pursuant to the acts of Congress. Brenner v. Musgrove, supra. It therefore follows that an Osage Indian, in disposing of his headright by will, may do so only by permission of Congress and under the terms imposed by the act so permitting.

In legislating concerning the testamentary disposition of property by restricted Indians, or the testamentary disposition of restricted

property by competent Indians, Congress has frequently imposed certain limitations insuring that his family, or certain members thereof, or certain named close relatives, shall not be omitted. Sometimes, as in section 23 of the Act of Congress of April 26, 1906 (34 Stat. 145), those persons who must be remembered are named. In other acts they are not named, but it is apparent that Congress has adopted the law of wills as it exists in the state where the Indian usually resides. We are of the opinion that there can be little doubt but that Congress in enacting section 8 of the Act of Congress of April 18, 1912 (37 Stats. at L. 86, 88), intended to adopt the general scheme of the statutes of Oklahoma pertaining to wills. That section of the act, as it is here emphasized, appears clear:

"That any adult member of the Osage Tribe of Indians not mentally incompetent may dispose of any or all of his estate, real, **personal,** or mixed, **including trust funds,** from which restrictions as to alienation have **not** been removed, **by will, in accordance with the laws of the state of Oklahoma;** provided, that no such will shall be admitted to probate or have any validity unless approved before or after the death of the testator by the Secretary of the Interior."

Paraphasing the language of the above section, in so far as it pertains to the present question, Congress has thereby said that a competent Osage Indian may dispose of his personal property by will, "in accordance with the laws of the state of Oklahoma." To us this means that such wills were to be interpreted in accordance with the law of this state; otherwise the words "in accordance with the laws of the state of Oklahoma" would have no meaning. We cannot help but conclude, therefore, that Congress had in mind the requirements contained in our statutes on wills when it adopted the above act. With that idea in mind we do not feel justified in assuming that it was the intention of Congress to permit such restricted property to be disposed of, by will or otherwise, in accordance with widely differing plans existing in the various states, wherever the Indian may happen to be when he executes the will or dies. We are further strengthened in this belief by noticing the fact that such Osage headrights are of no benefit except in their enjoyment as the fruit of proceeds from Oklahoma property; it is further probable that the fact that Osage Indians are located and live in Oklahoma almost entirely was influential in this phrase of the section.

There are two remaining assignments of error. We have considered them thoroughly, and while they are supported by proper authority and are correct as abstract principles of law, they are not sufficiently applicable to the will in question and to the facts of this case to require discussion.

The judgment is affirmed in all parts except in so far as it affects the two appealing grandchildren of the testator, hereinbefore mentioned. That part of the judgment decreeing that they each shall receive $2.50 by right of representation is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, and GIBSON, JJ., concur. CORN, J., dissents. BUSBY and WELCH, JJ., absent.