McKNIGHT v. PANTHER.

No. 30094. Nov. 18, 1941.

Rehearing Denied Dec. 16, 1941.

Application for Leave to File Second Petition for Rehearing Denied Jan. 27, 1942.

120 P. 2d 973.

Frank T. McCoy, John R. Pearson, and John T. Craig, all of Pawhuska, for plaintiff in error.

J. F. Murray, of Pawhuska, for defendant in error.

DAVISON, J. The defendant in error, hereinafter referred to as defendant, is a half-blood Osage Indian with a certificate of competency that was issued April 30, 1920. On October 24, 1925, plaintiff in error, hereinafter referred to as plaintiff, recovered a judgment against him, which was affirmed by this court on appeal. Panther v. McKnight, 125 Okla. 134, 256 P. 916. By various executions and an order of revivor, this judgment has been kept in full force and effect.

On September 16, 1940, plaintiff commenced this proceeding in aid of execution to require a disclosure of defendant's assets under section 480, O. S. 1931, 12 Okla. St. Ann. § 843. Upon the sworn affidavit of plaintiff's attorney, the trial court issued an order directing the defendant to appear and answer concerning his property and assets and restraining him from disposing or encumbering any of his cash, property, or other assets pending said proceeding and until further order of the court. Said order was dissolved or vacated when it appeared at the hearing held pursuant thereto that the only property in the defendant's possession, other than his household furniture, was a check drawn on the United States Treasury and made payable to the defendant in the sum of $250, as the quarterly pay-

ment due him by virtue of his interest or headright in the common property of the Osage Tribe of Indians held in trust by the federal government under various acts of Congress (Act of June 28, 1906, 34 St. L. 539; Act of March 3, 1921, 41 St. L. 1249).

Plaintiff has perfected this appeal, seeking a reversal of the trial court's order vacating the temporary restraining order. From his remarks and findings at the time he rendered said judgment, the trial judge seems to have been of the opinion that, since the defendant's headright was restricted and could not be sold or encumbered to satisfy his debts, the income accruing therefrom was likewise restricted in the hands of the defendant, and the court had no power to restrain him from disposing of said check or to compel him to apply its proceeds upon plaintiff's judgment.

The defendant argues that subjection of the proceeds of the check in question to execution would be tantamount or equivalent to encumbering or alienating plaintiff's headright, and quotes portions of this court's opinions in Brenner v. Musgrove, 168 Okla. 247, 32 P. 2d 740, and Denoya v. Arrington, 163 Okla. 44, 20 P. 2d 563, to show that the latter cannot be done. Plaintiff concedes that under these decisions the income accruing to the headright of a deceased Osage allottee subsequent to his death cannot be appropriated for the payment of his debts, and that a judgment creditor of an Osage Indian may not have a receiver appointed to sell his headright or collect the income accruing thereto, but she insists that neither of these propositions is applicable to the situation here presented. Both of the cases relied upon by the defendant involved future income from Osage headrights. The check involved in the present proceeding represents income that has already accrued to such a headright. It is clear from the opinions of the federal courts in Choteau v. Commissioner of Internal Revenue, 38 F. 2d 976; Chouteau v. Burnet, 283 U. S. 691, 75 L. Ed. 1353; and of this court in Leahy v. State Treasurer, 173 Okla. 614,

49 P. 2d 570, aff. 297 U. S. 420, 56 S. Ct. 507, 80 L. Ed. 771, that such income after it is fully received by a member of the Osage Tribe of Indians possessing a certificate of competency is free of all federal restrictions, is taxable, and is subject to the same burdens the law imposes upon the property of every other citizen. The distinction we have noted was pointed out in Taylor v. Tayrien, 51 F. 2d 884, as follows:

"Counsel also rely upon Choteau v. Commissioner, decided by this court (38 F. 2d 976) and affirmed by the Supreme Court (283 U. S. 691, 51 S. Ct. 598, 75 L. Ed. 1353) . . .

"That case dealt only with moneys actually paid to and in possession of the individual Indian, which were his to do with as he pleased.

". . . If the effort of the trustee in the case at bar were to reach funds which the Indian had received at the time of his adjudication, appellant's reference to the Choteau Case would be pointed. But that is not the effort here; the effort here is to reach future income that may come to the bankrupt from tribal property in which he has no present interest."

It will be noted that the facts of the present case differ from those of the above cited cases. Here it appears that at the time of the judgment debtor's first examination, the check in question was still in the mails and had not yet been received by him.

We are not unmindful that under the holding in the case of Chouteau v. Burnet, supra, exemption of Indian property from debt or taxation springs wholly from the acts of Congress and there is nothing in such acts which restricts the defendant's use of his income after it is in his hands. But with reference to the quarterly payment in question, this has not yet occurred. The check for such payment has not been cashed nor converted into other property. This case is therefore distinguishable from the Chouteau Case.

At the time of the issuance of said check, title to the fund on which it was drawn was in the federal government as

trustee for the Osage Tribe of Indians. The delivery of the check to defendant did not transfer to him title to any portion of said fund. Section 11488, O. S. 1931, 48 Okla. St. Ann. § 406. Wheeler & Motter Mercantile Co. v. Kitchen, 67 Okla. 131, 169 P. 877, L.R.A. 1918C, 160; First National Bank of Durant v. School Dist. No. 4, Bryan County, 31 Okla. 139, 120 P. 614, 39 L.R.A. (N. S.) 655; Cincinnati, etc., R. R. Co. v. Bank, 54 Ohio St. 60, 42 N. E. 700, 31 L.R.A. 653, 56 Am. St. Rep. 700. The title to the fund still remained in the government until such time as the check was presented for payment and properly cleared.

To hold that such a fund could be subjected to the forced payment of the defendant's debts, before it had come into his possession, would unquestionably be contrary to the will of Congress. Yet this, in effect, must be our decision if the plaintiff's position is upheld, and she would thus be enabled to do indirectly what she admittedly cannot do directly. We decline to approve such an evasion of the will of Congress.

The judgment is affirmed.

WELCH, C. J., CORN, V. C. J., and RILEY, OSBORN, BAYLESS, and HURST, JJ., concur. GIBSON and ARNOLD, JJ., dissent.